## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| Shelbi L. Sellers, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:12-cv-02496 |
| | ) | |
| Estee Lauder Macy's Department Store, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS CIVIL PROCEEDINGS

### I.       INTRODUCTION

Plaintiff Shelbi Sellers ("Ms. Sellers") agreed to resolve any and all employment-related disputes with Defendant Macy's Retail Holdings, Inc., erroneously sued herein as Estee Lauder Macy's Department Store ("Macy's"), exclusively by final and binding arbitration pursuant to Macy's dispute resolution program—Solutions InSTORE. However, rather than pursue arbitration, Ms. Sellers now brings the present action in this Court against Macy's for alleged violations of Title VII of the Civil Rights Act of 1964. By this motion, Macy's seeks to enforce the parties' arbitration agreement and respectfully requests the Court to (i) require Ms. Sellers to honor her arbitration agreement and compel her claims, which unquestionably fall within the ambit of the arbitration program, to arbitration, and (ii) dismiss this action or alternatively stay the action pending resolution of the arbitration.

## II.     STATEMENT OF FACTS

### A.     Macy's Solutions InSTORE Dispute Resolution Program

In 2003, Macy's, Inc. (formerly known as Federated Department Stores, Inc.) developed and implemented a comprehensive internal early dispute resolution program called Solutions InSTORE (hereinafter, "SIS Program"). Affidavit of Erin Coney ("Coney Aff.") ¶ 4. The SIS Program is a four-step program that gives employees an opportunity to raise and resolve workplace disputes early and fairly. *Id.* ¶¶ 4, 8-9. The SIS Program rolled out to all Macy's divisions and subsidiaries in fall 2003, and a slightly modified version of the SIS Program, which is at issue here, became effective January 1, 2007. *Id.* ¶ 7.

The four steps of the SIS Program are as follows:

**Step 1:**   Referred to as "Open Door," employees are encouraged to bring their concerns to a supervisor or member of local management informally.

**Step 2:**   In Step 2, the employee submits a written complaint to a senior human resources executive for investigation. A human resources executive not involved in the underlying decision conducts the investigation.

**Step 3:**   If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3. The employee submits a written Request for Reconsideration to the Office of Solutions InSTORE to begin this part of the process. If the dispute involves claims related to layoffs, harassment, discrimination, reduction in force, or other statutory violations, a trained professional investigates the issue thoroughly and objectively. Other disputes, including disputes over terminations and final warnings, may be submitted to a Peer Review Panel

2

at the employee's option. In either case, the local management is not
involved in the decision at this step.

**Step 4:**    The fourth and final step of the SIS Program is binding arbitration and
covers those employees who have not returned an opt-out form within the
prescribed time limits. Step 4-Arbitration is administered by the American
Arbitration Association ("AAA").

*Id.* ¶ 9 and Ex. A at pp. 1-5, and Ex. B at p. 9. By accepting employment with Macy's, all
employees agree to be covered by Steps 1 through 4 of the SIS Program. *Id*. ¶ 8 and Ex. A at pp.
1-2, 5. Importantly, however, Step 4—the arbitration component of the SIS Program—is not
mandatory. Macy's gives all new employees the opportunity to opt out of Step 4-Arbitration by
mailing an "opt-out" Election Form to the Office of Solutions InSTORE within thirty days of the
employee's date of hire. *Id.* ¶¶ 9-10, 13, and 20, Ex. A at p. 5, Ex. B at p. 10, Ex. C, and Ex. F at
pp. 4-5. While employees are encouraged to go through Steps 1 through 3 before proceeding to
Step 4-Arbitration, there is no administrative or other requirement that they do so. *Id.* ¶ 9.

The SIS Program prohibits retaliation against employees who use or opt out of
arbitration. *Id*. ¶ 12, Ex. A at p. 5 and Ex. B at p. 4. An employee's choice regarding Step 4-
Arbitration is confidential, and no one in an employee's workplace has access to this
information. *Id*. ¶ 13 and Ex. B at pp. 2, 4, 8. In fact, only a few employees located in Ohio have
access to an employee's decision regarding arbitration. *Id.* An employee's decision does not
affect her employment, and employment is not conditioned on agreeing to arbitration.

**B.      The SIS Program Offers a Fair, Equitable, and Efficient Process for
Resolving Disputes**

The SIS Program is designed to ensure that employees are treated fairly at every step:

3

- **The Employee Is In Control.** At each step of the SIS Program, only the employee has the right to proceed to the next step. Thus, an employee who obtains a favorable result at any of the first three steps can bind Macy's to that result by declining to go to the next step. *Id.* ¶ 11.

- **Minimal or No Fees or Costs to the Employee.** An employee initiating arbitration pays a filing fee of one day's pay or $125, whichever is less. Macy's pays the other arbitration costs, except for incidental costs. *Id.* ¶ 15(a), Ex. A at p. 14 and Ex. B at p. 9.

- **Macy's Reimburses the Employee's Attorney (or the Employee).** If the employee consults with an attorney for the arbitration, Macy's reimburses legal fees up to $2,500 over each continuously rolling 12-month period, no matter what the outcome. If the employee is not represented by an attorney, Macy's will reimburse the employee for incidental costs up to $500 over each continuously rolling 12-month period. *Id.* ¶ 15(c), Ex. A at p. 15 and Ex. B at p. 9.

- **The Employee Decides Whether Lawyers Are Involved.** If the employee decides not to have an attorney present at the arbitration, Macy's also appears without counsel. *Id.* ¶ 15(b), Ex. A at p. 9 and Ex. B at p. 9.

- **Governing Rules.** The arbitration is administered for the most part under the AAA employment arbitration rules. Any exceptions to the AAA rules are noted in the Plan Document. *Id.* ¶ 15(f) and Ex. A at p. 6.

- **Mutuality.** If an employee is required to arbitrate claims against Macy's, Macy's has to resolve any employment-related disputes it has with the employee by arbitration as well. *Id.* ¶ 14 and Ex. A at p. 6.

- **Discovery.** Discovery is permitted and includes document disclosures, twenty interrogatories (each of which may contain a request for production of documents), and three depositions. In addition, the Plan requires the parties to exchange any and all documents or

4

information that might be relevant to the claims or defenses asserted in the arbitration. Importantly, the arbitrator has the authority to allow additional discovery as well. *Id.* ¶ 15(d) and Ex. A at pp. 9-10.

• **No Curtailment of Ultimate Relief or Limitations Periods.** The arbitrator has the same power and authority as a judge to grant any ultimate relief under any applicable law, including attorneys' fees and costs. The statutes of limitation that apply to court claims apply equally to the arbitration procedure and are not curtailed in any way by the SIS Program. *Id.* ¶ 15(e) and Ex. A at pp. 8, 15.

The Plan Document describes the types of claims that fall within the ambit of Step 4-Arbitration. With limited exceptions, the agreement covers employment-related claims asserted by the employee or by Macy's, whether the claims arise under federal, state, or local law. *Id.* ¶ 14 and Ex. A at pp. 6-7. The arbitration agreement is subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  Coney Aff. Ex. A at p. 16.

### C. Macy's Educated Ms. Sellers About the SIS Program

Plaintiff Shelbi Sellers was hired on November 18, 2009 at the Macy's Oak Court store in Memphis, Tennessee and, on February 10, 2012, her employment was terminated. *Id.* ¶ 16.

Newly-hired employees, like Ms. Sellers, are given the opportunity to opt out of Step 4-Arbitration within thirty days of their hire. *Id*. ¶¶ 9-10 and Ex. A at p. 5, Ex. B at p. 10, Ex. C, and Ex. F at pp. 4-5. Employees are made aware of the SIS Program details and their ability to opt-out of Step 4-Arbitration in various ways, including: (1) the Solutions InSTORE New Hire Brochure; (2) the Solutions InSTORE Plan Document ("Plan Document"); (3) the opt-out Election Form; (4) the Solutions InSTORE New Hire Acknowledgement; (5) the Solutions

InSTORE poster; (6) the Solutions InSTORE website; and (7) the new hire orientation video. *Id.* ¶ 17 and Exs. A-F.

## 1.     The Solutions InSTORE New Hire Brochure and Plan Document

All new employees are provided with the Solutions InSTORE New Hire Brochure ("the Brochure") and Plan Document at new hire orientation. Coney Aff. Exs. A & B. The Brochure explains each step of the SIS Program in detail. *Id.* ¶ 18 and Ex. B. The Brochure begins with an overview of the SIS Program and then reiterates during the remaining pages that: Macy's does not retaliate against employees for using the SIS Program; new hires are not required to elect arbitration, but, rather, may "opt-out;" and Macy's bears the overwhelming majority of the costs and fees of the various steps. *Id.* The Brochure, which devotes multiple pages to Step 4-Arbitration, clearly explains the employee's right to opt out of Step 4-Arbitration. *Id.* ¶ 19 and Ex. B at pp. 9-11.

> **Step Four: the decision is yours**
> Your Solutions InStore enrollment period will be your opportunity to decide whether you want to receive all four steps of this program. You are automatically covered by Step 4 unless you choose to exclude yourself. When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial. If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing the form enclosed in this brochure and returning it to The Office of Solutions InSTORE at the address provided within 30 days of your hire date.

Coney Aff. Ex. B at p. 10. The Brochure emphasizes that the arbitration process is binding, covers most disputes related to the employee's employment, and is a waiver of the right to a court proceeding and jury trial. *Id.* ¶ 19 and Ex. B at p. 10. Finally, the Brochure further informs as follows:

> More specific details are in the program's Plan Document, which is included here. You should read it. A copy of the Plan Document can also be obtained through www.employeeconnection.net, a request to your local human resources representative, an email sent to solutions.instore@macys.com or by calling the Office of Solution InSTORE at 1-866-285-6689.

*Id.*

### 2.      The Opt-Out Election Form

The Brochure also contains an "Early Dispute Resolution Program Election Form"—the opt-out form an employee must complete and mail to the Office of Solutions InSTORE if the employee wishes to opt out of Step 4-Arbitration. *Id.* ¶¶ 19-20 and Exs. B and C. The Election Form makes clear that an employee must act within thirty days of her hire date if the employee wishes to opt out of Step 4-Arbitration; otherwise the employee agrees to binding arbitration. *Id.* ¶ 20 and Ex. C. The address to mail the Election Form and the opt-out language are clear and conspicuous. *Id.*

### 3.      The Solutions InSTORE New Hire Acknowledgement

At the time of hire, every new employee completes certain online forms electronically, including, for example, an employee's Form W-4, associate discount acknowledgement, and Form I-9. One of the online forms relates to the Solutions InSTORE Program, and, specifically, Step 4-Arbitration. The Solutions InSTORE New Hire Acknowledgement says—

> I have received a copy of the Solution InSTORE brochure and Plan Document and acknowledge that I have been instructed to review this material carefully. I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration.

Affidavit of Ragunathan Veeraraghavan ("Veeraraghavan Aff.") ¶ 13 and Ex. G; Coney Aff. ¶ 21 and Ex. D. The Acknowledgment further requires the employee to affirm, "I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my

7

taking or continuing a job in any part of Macy's, Inc.", and "I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE." Veeraraghavan Aff. ¶ 13 and Ex. G; Coney Aff. ¶ 21 and Ex. D.

To electronically sign the Solutions InSTORE New Hire Acknowledgement, the employee is required to input her Social Security number, month and day of birth, and zip code. Veeraraghavan Aff. ¶ 9. Ms. Sellers electronically signed the Solutions InSTORE New Hire Acknowledgment form on November 18, 2009 at 6:39:45 p.m. Eastern Standard Time. *Id.* ¶ 12 and Ex. G. According to the date and time stamps associated with her online forms, Ms. Sellers electronically signed the Solutions InSTORE New Hire Acknowledgement directly after completing her Form W-4 and just before completing her United Way pledge. *Id.* ¶ 14 and Ex. H. Accordingly, there can be no dispute that Ms. Sellers received the Solutions InSTORE Brochure containing the Plan Document, "opt-out" Election Form and the message that she was required to send the "opt-out" Election Form within 30 days of her hire date.

### 4.     The Solutions InSTORE Poster

At the time of Ms. Sellers's hire and throughout her employment, a poster describing the 4-step process of Solutions InSTORE was provided to her store for display in an area frequented by employees. Coney Aff. ¶ 22 and Ex. E. The poster diagrams each step of the SIS Program, including Step 4-Arbitration, in the form of a pyramid. *Id.*

### 5.     Solutions InSTORE Video

Each store is provided with a video explaining Solutions InSTORE and is directed to show this video to each employee on the day of hire or shortly thereafter. The video explains the

four steps of the program, including the voluntary nature of the fourth step, and further explains the arbitrator's role and the finality of the arbitrator's decision. Coney Aff. ¶ 24 and Ex. F.

### D.    Ms. Sellers Agreed to Participate in Step 4-Arbitration

Macy's directly informed Ms. Sellers by no less than four methods—the Brochure, the Plan Document, the Election Form, and the New Hire Acknowledgement—about the Solutions InSTORE program. These documents expressly refer to the voluntary nature of Step 4-Arbitration and the actions necessary for an employee to opt out of Step 4-Arbitration. Indeed, all four documents instructed Ms. Sellers that if she wanted to opt out of Step 4-Arbitration, she was required to return a completed opt out form within thirty days of her hire date.

Ms. Sellers never returned an opt-out Election Form to Macy's. Macy's and the Office of Solutions InSTORE have regular procedures for processing Election Forms. Coney Aff. ¶ 25. Each Election Form is date-stamped when it is opened. *Id.* The Election Form is reviewed for completeness and then the employee's opt-out status is recorded into the PeopleSoft database. *Id.* This database is used by the Office of Solutions InSTORE to record opt-out status. *Id.* Hard copies of Election Forms are maintained in filing cabinets by Social Security number. *Id.* ¶ 27. The Office of Solutions InSTORE reviewed the PeopleSoft Human Resource System to determine if Ms. Sellers had returned an Election Form. *Id.* ¶ 28. According to the system, Ms. Sellers never returned an Election Form after commencing her employment in November 2009. *Id.* Likewise, the hard copy files do not contain an Election Form for Ms. Sellers. *Id.* Accordingly, Ms. Sellers elected to participate in Step 4-Arbitration.

### E.    Ms. Sellers's Claims

On June 22, 2012, Ms. Sellers filed a "Complaint Under Title VII of the Civil Rights Act of 1964" ("Complaint") in the United States District Court, Western District of Tennessee, Western Division. In her Complaint, Ms. Sellers alleges that Macy's terminated her employment and/or failed to promote plaintiff due to plaintiff's race and/or color. Complaint, ¶¶ 9-10. All of her claims relate to her employment with Macy's in that she claims Macy's discriminated against her by hiring "White American Women" rather than promoting her and then subsequently terminated her employment. *Id.*

III.    **ARGUMENT**

As discussed above, Ms. Sellers had ample notice of the SIS Program and had sufficient opportunity to opt out of Step 4-Arbitration, if she chose to do so. By affirmatively acknowledging receipt of the SIS Program materials and her right to opt out of Step 4-Arbitration, Ms. Sellers, by continuing her employment and electing to *not* opt out, created a binding agreement to arbitrate all employment-related claims.

A.      **Public Policy Favors Enforcing Arbitration Agreements**

The arbitration agreement at issue here provides that the FAA governs. Coney Aff. Ex. A at p. 16. In 1925, Congress enacted the FAA to reverse decades of judicial hostility toward arbitration agreements and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, arbitration is proper when there is a valid written agreement covering the asserted claims. 9 U.S.C. § 2. This includes employment arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

10

arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Guided by the FAA, the U.S. Supreme Court has repeatedly held arbitration agreements are to be read liberally to effectuate their purpose (*id*. at 22, 24-25) and must be "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987), quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

> **B.    The Parties' Arbitration Agreement Is Valid and Enforceable and Encompasses the Parties' Underlying Dispute**

On a motion to compel arbitration, a court considers two key issues: (1) whether the parties formed a valid and enforceable agreement to arbitrate, and (2) whether the agreement to arbitrate encompasses the underlying dispute. *Dean Witter, supra*, 470 U.S. at 218; 9 U.S.C. §§ 2, 3, 4; *see also Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646, 649 (6th Cir. 2005).

> **1.    The Arbitration Agreement Is Valid and Enforceable**

Courts review the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 666 (6th Cir. 2003) (en banc) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 44 (1995).) In Tennessee, a contract is enforceable if there was mutual assent between the parties at the time of contract formation and if there was sufficient consideration to support the arbitration agreement. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 751 (E.D. Tenn. 2011).

> **a.    Mutual Assent Existed Between Macy's and Ms. Sellers at the Time of Contract Formation**

In this case, Ms. Sellers assented to arbitration by continuing her employment and failing to opt out. "'In determining mutuality of assent, courts use an objective standard based on the manifestations of the parties.' [Citation.] Assent to a contract need not take the form of words, but may instead be 'manifested, in whole or in part, by the parties' spoken words or by their

11

actions or inactions.'" *Rode Oil Co. Inc. v. Lamar Advertising Co.*, 2008 Tenn. App. LEXIS 532,

*26 (Tenn. Ct. App. 2008) (citing *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521

(Tenn. Ct. App. 2002); *see also Brubaker*, *supra*, 801 F. Supp. 2d at 757 (noting that "assent can

be shown by 'the course of dealing of the parties,' and 'whether the parties performed under its

terms'") (quoting *T.R. Mills Contractors, Inc. v. WRH Enter., LLC*, 93 S.W.3d 861, 866 (Tenn.

Ct. App. 2002).

For example, in *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967 (6th Cir. 2007), the court

found that an employee, the plaintiff, had assented to the terms of her employer's alternative

dispute program, even though there was no signed writing in which the plaintiff explicitly

consented to the terms of the relevant program.   In that case, the employer instituted a new

dispute   resolution   procedure,   which   it   introduced   through   informational   meetings,

announcements, and numerous mailings. *Id.* at 970. The evidence showed that the plaintiff had

attended an informational meeting on the new program and signed an attendance sheet

acknowledging that she had attended the meeting and had received the pamphlet outlining the

new program. *Id.* at 971. After the plaintiff was informed about the program, the plaintiff then

continued her employment.  *Id.*  Upon termination, the plaintiff filed a lawsuit and, in response to

a motion to compel, argued that she had never consented to the terms of the arbitration program.

*Id.* The court held, in light of the extensive record indicating that the employee was well aware

of the terms of the program and continued her employment upon becoming aware of the

program, the employee had "knowingly and voluntarily" accepted the program's terms. *Id.* at

974.

Here, Ms. Sellers manifested her assent by failing to opt out when she had a duty to do so

to avoid being bound and continuing her employment. Macy's gave all employees an opportunity

to opt out of Step 4-Arbitration. However, the SIS Program documents are clear that, absent an opt-out, employees are bound to arbitration. Coney Aff. Ex. A at pp. 2, 5, Ex. B at p. 10, Ex. C, and Ex. F at pp. 4-5. Thus, Ms. Sellers had the obligation to opt out if she did not want to be bound by arbitration. Like the employee in *Seawright*, Ms. Sellers received numerous documents regarding the SIS Program, including the New Hire Brochure, the Election Form, and the Plan Document. Coney Aff. Ex. A, B, C. Further, as in *Seawright*, Ms. Sellers signed a document in which she acknowledged receipt of the Plan Document and New Hire Brochure and further acknowledged that she understood she was obligated to opt out of Step 4-Arbitration within 30 days of her hire date. Coney Aff. Ex. D. By choosing *not* to return the "opt-out" Election Form despite the opportunity to do so and by then continuing her employment with Macy's, Ms. Sellers manifested her assent to participate in Step 4-Arbitration.

> **b.    Sufficient Consideration Supports the Parties' Arbitration Agreement**

In Tennessee, sufficient consideration for an arbitration agreement exists if the arbitration program is binding on both the employer and the employee. *See Brubaker*, *supra*, 801 F. Supp. 2d at 753-754; *see also Seawright*, *supra*, 507 F.3d at 974 ("the arbitration process was binding on both employer and employee, regardless of who requested arbitration. Thus, employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan. This is enough to ensure mutuality of obligation and thus constitutes consideration."); *Wilks v. The Pep Boys*, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) ("[P]laintiffs' claims that the Agreement is invalid for lack of consideration and because it constitutes an 'illusory promise' are without merit.  Both parties are bound to arbitrate claims arising in their relationship … Therefore, there is sufficient consideration for the mutual promises.")

13

Macy's agreement to bind itself to the arbitration agreement, and foreclose its right to seek redress in the courts, is sufficient consideration for the SIS Program. As set forth in the Plan Document, "[a]rbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company … . Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate." Coney Aff. ¶ 14 and Ex. A at p. 6. Accordingly, sufficient consideration exists to support the parties' arbitration agreement.

### c.    The SIS Program Is Not Unconscionable

A contract is unconscionable when its terms "are beyond the reasonable expectations of an ordinary person or oppressive." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). To determine whether an arbitration agreement is unconscionable, courts analyze whether the agreement is procedurally and substantively unconscionable. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170-171 (Tenn. Ct. App. 2001). "Procedural unconscionability is usually some impropriety during the process of forming the contract that deprives a party of a meaningful choice." *Byrd v. SunTrust Bank*, 2013 U.S. Dist. LEXIS 101909, *18 (W.D. Tenn. 2013) (quoting *Vintage Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009)). Substantive unconscionability results if the contract terms are unreasonably harsh or one-sided. *Trinity Indus., Inc.*, *supra*, 77 S.W.3d at 170-171; *Guiangan*, *supra*, 309 S.W.3d at 461.

### i.    The SIS Program is Not Procedurally Unconscionable

Ms. Sellers was given a meaningful choice with respect to her decision to participate in the SIS Program. Macy's took pains to ensure that the SIS Program was effectively communicated to its employees and to ensure that employees had adequate time to consider whether to opt out of Step 4-Arbitration. Notably, (1) all employees, including Ms. Sellers, are

given a 30-day opt out period; (2) numerous materials related to the SIS Program are given out to newly hired employees, including, but not limited to the New Hire Acknowledgment, the New Hire Brochure, and the Plan Document; (3) the complete SIS Program is spelled out to new employees in the New Hire Brochure and the Plan Document; and (4) an employee's decision respecting arbitration is confidential—an employee's supervisor and co-workers will not know what decision an employee made unless the employee tells them; only the few employees in the Office of Solutions InSTORE and the person inputting the information into the database know what any given employee has elected to do. Coney Aff. ¶¶ 10, 13, 17-24 and Exs. A, B, and D.

### ii.    The SIS Program is Not Substantively Unconscionable

The terms of the SIS Program are not overly harsh or one-sided. First, the SIS Program is mutual: if Macy's pursues a claim against an employee who has not opted out of arbitration, Macy's must use the arbitration forum as well. Coney Aff. ¶ 14 and Ex. A, p. 6. Second, the SIS Program does not shorten the applicable statutes of limitations or limit remedies in any way. Coney Aff. ¶ 15(e) and Ex. A at pp. 8, 15. Third, the SIS Program allows the parties to mutually select an arbitrator from a list of seven names provided by the AAA, with each side taking turns striking the arbitrators.  If both parties are unhappy with the arbitrator selected, another panel can be requested. Coney Aff. ¶ 15(e) and Ex. A at pp. 8-9. Fourth, the SIS Program provides for the voluntary disclosure of documents by both parties related to the claims and defenses at issue, each party is allowed to take three depositions and propound twenty interrogatories (each of which can include a document request for related documents), and the parties can serve subpoenas. The arbitrator also has discretion to allow additional discovery. Coney Aff. ¶ 15(d) and Ex. A at pp. 9-10. Fifth, the most an employee can be asked to pay to arbitrate her claims is the lesser of one day's base pay or $125. Macy's bears the rest of the costs other than incidentals

related to the arbitration, such as photocopying and producing evidence. Coney Aff. ¶ 15(a) and Ex. A at p. 14, Ex. B at p. 9. Finally, if the employee consults with or is represented by an attorney for the arbitration, Macy's reimburses the employee's legal fees up to $2,500 over a continuously rolling 12-month period. This amount is paid even if the employee is not successful at the arbitration. If the employee is not represented by an attorney, Macy's will also appear without an attorney and will reimburse the employee for incidental costs up to $500 over the same rolling period. Coney Aff. ¶ 15(b), (c) and Ex. A at pp. 9, 15 and Ex. B at p. 9.  In short, there are very few differences between arbitration under the SIS Program and litigating in a court of law other than streamlined discovery, the waiver of the right to a jury (which is inherent in any agreement to arbitrate), and the restriction on an employee's ability to seek relief in a representative capacity. Thus, the SIS Program is not substantively unconscionable.

### 2.    The SIS Program Encompasses Ms. Sellers's Claims

Arbitration should not be rejected "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). If the scope of an arbitration agreement is written broadly, arbitration should only be denied where the parties have expressly excluded the grievance from arbitration. *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 261 (6th Cir. 2010). If there is doubt regarding whether a plaintiff's claims fall within the scope of an arbitration agreement, the court should resolve any doubt in favor of arbitration. *Id.; see also Moses H. Cone*, *supra*, 460 U.S. at 24-25.

Here, the parties' arbitration agreement is very broad and covers all "employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law", including

16

"claims arising under … Title VII of the Civil Rights Act of 1964". Coney Aff. ¶ 14 and Ex. A at pp. 6-7. The only claims explicitly excluded from arbitration are those "that are required to be processed under a different procedure pursuant to the terms of an employee pension plan or employee benefit plan" or "[c]laims by Associates for state employment insurance … or under the National Labor Relations Act". Coney Aff. Ex. A, p. 7.

In her Complaint, Ms. Sellers alleges claims under Title VII for alleged discrimination due to race and/or color; specifically, Ms. Sellers claims that Macy's failed to promote her and terminated her employment due to her race and/or color. Plaintiff's Complaint, ¶ 9. Ms. Sellers's claims are clearly employment-related, and Title VII claims are arbitrable under both the terms of the SIS Program and pursuant to Supreme Court precedent. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991) (holding that age discrimination claim was subject to mandatory arbitration); *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123, (2001) ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law"); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 309 (6th Cir. 1991) (upholding mandatory arbitration of Title VII claims). Accordingly, the scope of the parties' agreement encompasses Ms. Sellers's claims.

C.    **Electronic Signatures Are Valid in Tennessee**

Ms. Seller's electronic signature on the New Hire Acknowledgment is valid and enforceable under Tennessee law. *See* Tenn. Code Ann. § 47-10-107(a) (2013) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). The Tennessee Code Annotated defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a

17

person with the intent to sign the record." Tenn. Code Ann.   § 47-10-102(8) (2013). An electronic signature cannot be denied enforcement solely because it is electronic—"An electronic record or electronic signature is attributable to a person as if it were the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to whom the record or electronic signature was attributable." Tenn. Code Ann. § 47-10-109(a) (2013). The Comments to Tennessee Annotated Code § 47-10-109 clarifies that "[n]umerical codes, personal identification numbers, public and private key combinations all serve to establish the party to whom an electronic record should be attributed." *Id.*

Macy's has instituted multiple security precautions to ensure that new hire documents are completed by the employee to whom they pertain. The first security measure is the login process itself, which requires the employee to enter several personal identification numbers—her Social Security number, date of birth and zip code—in the appropriate fields displayed on the online forms login screen before she can gain access to any of the forms and then click submit. Veeraraghavan Aff. ¶ 5 and Ex. B. After submitting the information, the next screen the employee will see is the Online Forms Main Menu, which lists all of the forms the employee must to complete for employment. *Id*. at ¶ 6 and Ex. C.

After selecting a form and clicking the "Fill in Form" designation next to it, the form is then shown. *Id*. at ¶ 7. The employee adds the requested information on the form or, in the case of the New Hire Acknowledgement, reads it and then clicks the link at the bottom of the page to certify the contents of the page. *Id*. at ¶ 8. Once the employee clicks the link at the bottom of the New Hire Acknowledgment, the employee encounters additional security measures. Specifically, a dialogue box appears requesting that the employee electronically sign the New Hire

18

Acknowledgment. *Id*. at ¶ 9 and Ex. D. In order to electronically sign the form, the employee must again enter her Social Security number, date of birth and zip code in the appropriate fields and then click the "Continue" link in the electronic signature dialogue box. *Id*.

To ensure the validity of the electronic signature, the information entered in the fields of the electronic signature dialogue box is compared against the user's session values (i.e., the Login information) to make sure that the Social Security numbers match. *Id*. at ¶ 10. If the Social Security numbers do not match, the user is prompted to reenter her personal information. *Id*. After 5 invalid attempts, the account is locked and the session is terminated. *Id*. If the Social Security numbers match, the database is then queried to ensure that the zip code also match. *Id*. If they match, the application saves these fields along with all the other form fields to a database record in an XML format. *Id*.

Macy's records show that Ms. Sellers acknowledged and electronically signed a Solutions InSTORE New Hire Acknowledgment on November 18, 2009 at 6:39:45 p.m. Eastern Time. *Id*. at ¶ 13 and Ex. G. Notably, Ms. Sellers not only signed the Solutions InSTORE New Hire Acknowledgment but also completed and/or electronically signed ten online forms in succession, the seventh of which was the electronic acknowledgment of the Solutions InSTORE Brochure. *Id*. at ¶14 and Ex. H.

### D.    Federal Courts Have Consistently Enforced Step 4-Arbitration

Federal courts across the country have enforced the SIS arbitration agreement; an order compelling arbitration in this case will be consistent with those decisions. *See, e.g., Quevedo v. Macy's, Inc*., No. 09-1522, 2011 U.S. Dist. LEXIS 83046 (C.D. Cal. June 16, 2011); *Vitolo v. Bloomingdale's, Inc*., No. 09-7728, 2011 U.S. Dist. LEXIS 91442 (C.D. Cal. May 22, 2011); *Hicks v. Macy's Dep't Stores, Inc*., No. 06-02345, 2006 U.S. Dist. LEXIS 68268 (N.D. Cal. Sept.

19

11, 2006); *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6 (2d Cir. 2009); *Dorward v. Macy's, Inc.*, No. 10-669, 2011 U.S. Dist. LEXIS 78639 (M.D. Fla. July 20, 2011); *Zekri v. Macy's Retail Holdings, Inc.*, No. 10-1740, 2010 U.S. Dist. LEXIS 119453 (N.D. Ga. Nov. 4, 2010); *Rupert v. Macy's, Inc.*, No. 09-2763, 2010 U.S. Dist. LEXIS 54050 (N.D. Ohio June 2, 2010); *Hunt v. Macy's Retail Holdings, Inc.*, No. 08-14307, 2009 U.S. Dist. LEXIS 9783 (E.D. Mich. Feb. 10, 2009); *Johnson v. Macy's South, LLC*, No. 07-1256, 2007 U.S. Dist. LEXIS 72519 (N.D. Ga. Sept. 27, 2007); *Dubois v. Macy's East Inc.*, No. 06-6522, 2007 U.S. Dist. LEXIS 66500 (E.D.N.Y. July 13, 2007), aff'd, 338 Fed. Appx. 32 (2d Cir. 2009); *Marley v. Macy's South*, No. 405-227, 2007 U.S. Dist. LEXIS 43891 (S.D. Ga. June 18, 2007); *Nguyen v. Federated Dep't Stores, Inc.*, No. 05-0140, 2006 U.S. Dist. LEXIS 2878 (N.D. Ga. Jan. 19, 2006).

### E.      This Action Should Be Dismissed or Alternatively Stayed During Arbitration

Dismissal of this case is appropriate. All of Ms. Sellers's claims are arbitrable, and nothing will remain for the Court to decide once the arbitration is complete. In addition, the parties' arbitration agreement requires dismissal in these circumstances: "If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." Coney Aff. Ex. A at p. 7. Under the agreement, a stay is warranted only where "a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration". *Id*. Because all of Ms. Sellers's claims against Macy's are subject to arbitration, Macy's requests that the parties be ordered to arbitration and that this Court dismiss this action. Alternatively, Macy's requests the Court stay the action pending the completion of the arbitration.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Macy's Retail Holdings, Inc. (incorrectly named as Estee Lauder Macy's Department Store) respectfully requests that the Court enforce the parties' agreement to arbitrate, compel Plaintiff Shelbi Sellers to arbitrate her claims, and dismiss the proceedings or alternatively stay the proceedings until the arbitration is completed.

Respectfully submitted,

**THE HUNT LAW FIRM**

/s/Sean Antone  Hunt_____
**SEAN ANTONE HUNT**, BPR#16159
Attorneys for the Defendant
P.O. Box 171119
Memphis, TN 38187-1119
901-730-0937 ofc
901-753-7542 fax
sean@thehuntfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing document upon the following, by mailing him or her a copy of the same through the United States mail in a properly addressed envelope with sufficient postage affixed to reached its destination and/or by electronic means via the Court's electronic filing:

Shelbi Sellers
Pro Se
3636 Outland Dr.
Memphis, TN 38118

this 20th day of September, 2013.

/s/Sean Antone Hunt_____
SEAN ANTONE HUNT, ESQ.

21