UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| Shelbi L. Sellers, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:12-cv-02496 |
| | ) | |
| Estee Lauder Macy's Department Store, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF ERIN CONEY IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND DISMISS CIVIL PROCEEDINGS**

COMES NOW the affiant, Erin Coney, and being duly sworn upon her oath, and being over the age of eighteen (18), does hereby state as follows:

1.       My name is Erin Coney.  I submit this affidavit in support of Defendant Macy's Retail Holdings, Inc.'s ("Macy's") Motion to Compel Arbitration and Dismiss Civil Proceedings. I have personal knowledge of the facts set forth herein, which are known to me to be true and correct, and, if called as a witness, I could and would competently testify thereto.

2.       I am employed as Director of Employee Relations, Solutions InSTORE, for Macy's, Inc., which was formerly known as Federated Department Stores, Inc.  Macy's, Inc. is the parent company of Macy's Retail Holdings, Inc., which operates department stores in certain areas of the United States (including Tennessee) that are known as "Macy's".

3.       In my capacity as Director, I am responsible for the management and administration of Macy's Solutions InSTORE Early Dispute Resolution Program.  I supervise the Solutions InSTORE Program and the employees whose sole job is to administer the Solutions

InSTORE Program. I am also familiar with the history of the Solutions InSTORE Program before the time I became responsible for it in May 2013.

### The Solutions InSTORE Program

4.      In 2003, at great effort and expense, Macy's, then known as Federated Department Stores, Inc., developed and implemented Solutions InSTORE, which is a comprehensive early dispute resolution program. The purpose of the Solutions InSTORE Program is to surface and resolve disputes as early and fairly as possible. The Solutions InSTORE program applies to employees of all subsidiaries and divisions of Macy's, Inc., including Macy's Retail Holdings, Inc.

5.      To support the Solutions InSTORE Program, Macy's established an Office of Solutions InSTORE within its Employee Relations Department in Cincinnati, Ohio.

6.      Currently, the Office of Solutions InSTORE is staffed with employees whose only responsibilities are the administration of the Solutions InSTORE Program. This staff reports to me. Their responsibilities, under my direct supervision, include (a) managing associate calls to the toll-free Solutions InSTORE phone number and email address; (b) conducting investigations; (c) managing administration associated with program execution; and (d) training professionals throughout the company on topics such as facilitating Step 3 Peer Review Panels, managing investigations, and facilitating early resolution. The Office of Solutions InSTORE has its own dedicated budget from which the program is administered.

7.      The Solutions InSTORE Program was first rolled out in Fall 2003, with an effective date of January 1, 2004 to all then-current, non-unionized employees of all Macy's-related companies, including those employed at Macy's stores located in Tennessee. The Solutions InSTORE Program was subsequently revised and the current version of the Solutions

InSTORE Program was implemented effective January 1, 2007. This affidavit will discuss the current version of the Solutions InSTORE Program, as effective January 1, 2007, since that is the relevant Solutions InSTORE Program for this case.

8.     The Solutions InSTORE Program contains four separate steps for resolution of work-related problems.  By accepting and continuing employment with Macy's, all employees are covered by Steps 1 through 4 of the Solutions InSTORE Program.  The final step is binding arbitration – unless the employee has chosen not to participate in the arbitration portion of the Solutions InSTORE Program.  The four steps are explained in depth in the Solutions InSTORE Plan Document.  A true and correct copy of the Plan Document, effective January 1, 2007 and in force when Ms. Sellers was first hired, is attached as **Exhibit A**.

9.     A summary of the Solutions InSTORE Program's four steps are as follows:

**Step 1:**  The Solutions InSTORE Program begins with "Open Door."  Employees are encouraged to bring their concerns to a supervisor or local management team member (e.g., Store or Facility Manager, Human Resources Representative) for discussion and resolution.

**Step 2:**  In Step 2, the employee submits a written request for review to the Office of the Senior Human Resources executive of the Macy's or Macy's region/division where he or she works.  A human resources executive not involved in the underlying decision conducts an investigation.

**Step 3:**  If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3, and the request is directed to the Office of Solutions InSTORE in Cincinnati, Ohio.  If the dispute involves a claim(s) related to layoffs, harassment, discrimination, reduction in force, or other alleged

3

statutory violations, a trained professional investigates it thoroughly and objectively. Other disputes, including disputes over termination and final warnings, may be submitted to a Peer Review Panel at the employee's option.  In either case, the dispute is decided by the Peer Review Panel or the Office of Solutions InSTORE and not by local/divisional management.

**Step 4:**   The fourth and final step of the Solutions InSTORE Program is binding arbitration.  Arbitration under the Solutions InSTORE Program is a voluntary term and condition of employment in that all employees are given the opportunity to opt out of arbitration by completing a one-page form and mailing it to the Office of Solutions InSTORE in Ohio within a prescribed time period.  If the employee does not submit the opt-out form within the prescribed time period, the employee agrees to arbitration as a term and condition of continued employment.  Employees may agree to employment with or without Step 4-Arbitration.  Also, while employees are encouraged to go through Steps 1 through 3 before proceeding to Step 4-Arbitration, there is no administrative or other requirement that they do so.

10.    Employees hired after the implementation of the Solutions InSTORE Program are given thirty (30) days from their date of hire to opt out of Step 4-Arbitration.

11.    Under the terms of the Solutions InSTORE Program, Macy's is bound by the decisions made at any of the first three steps of the Solutions InSTORE Program – even those not in Macy's favor. In contrast, the employee is free to appeal any decision made at these steps. The employee drives the process.  The parties' ability to appeal binding arbitration decisions is governed by the Plan Document.

4

12.     An employee's decision to accept or opt out of binding arbitration has no effect on her employment.  Macy's and each of its affiliated companies strictly prohibit retaliation against employees who use, or opt out of, the Solutions InSTORE Program.  Such retaliation would seriously undermine the Solutions InSTORE Program's core purpose, which is to surface and resolve disputes quickly and fairly.  The company communicates its no retaliation policy to its employees through the Solutions InSTORE Program information given to employees.

13.     The employee's choice whether to opt out of Step 4-Arbitration is confidential. Macy's intentionally designed the opt-out procedure so that local management is unaware of an employee's election.  All employees across the country are asked to mail the opt-out Election Forms to Ohio so that no one at the Macy's stores or other work locations has access to individual election information, including returned forms.   Only a select few company employees have access to the returned opt-out Election Forms and the portion of the electronic database containing an employee's opt-out status.  An employee's opt-out status is accessed only when that information becomes relevant to handling an employee's claim.

14.     If an employee elects to be covered by Step 4-Arbitration, the agreement covers most eligible employment-related claims asserted either by the employee or by Macy's, whether the claims arise under federal, state, or local law.  Certain claims are not subject to arbitration, such as those brought under an employee pension or benefit plan, those for state employment insurance, or those under the National Labor Relations Act.  If the employee elects to be covered by arbitration, Macy's in turn has to resolve any employment-related disputes with the employee by arbitration as well.  (Ex. A, pp. 6-7.)

15.     Other aspects of Step 4-Arbitration of the Solutions InSTORE Program include:

5

(a)      the employee bears minimal costs equal to one day's wage, not to exceed a maximum of $125 for a filing fee, and may pay nothing if the arbitrator so orders (Ex. A, pp. 14-15);

(b)      Macy's will have an attorney present at the arbitration only if the employee decides to have an attorney present at the arbitration (Ex. A, p. 9);

(c)      Macy's will reimburse the employee's legal fees up to $2,500 each year (calculated on a continuously rolling 12-month period), and if the employee elects not to be represented by counsel, Macy's will reimburse the employee for incidental costs up to $500 (also calculated on a rolling 12-month period) (Ex. A, p. 15);

(d)      discovery is permitted and includes voluntary document disclosures by both parties, three depositions per side, twenty interrogatories (each of which may include a document request), and a provision allowing the arbitrator to award more discovery if the relevant standard is met (Ex. A, pp. 9-10);

(e)      the arbitrator, jointly selected by both Macy's and the employee, has the same power and authority as a judge to grant any ultimate relief under applicable law, including attorney's fees and costs; and the applicable statutes of limitation are the same as those that would apply in court (Ex. A, pp. 8, 15);

(f)      the arbitration is administered under the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures, with any differences being noted in the Plan Document (Ex. A, p. 6); and

(g)      the Solutions InSTORE Program also requires an arbitrator to submit a written decision specifying any remedies found to be appropriate. The arbitrator may also include findings of fact and conclusions of law in any decision.  (Ex. A, p. 14.)

6

**Information Campaign Regarding the Solutions InSTORE Program for New Hires**
**Like Plaintiff Shelbi Sellers**

16.     By consulting the PeopleSoft human resources computer system, I learned that Macy's employed Shelbi Sellers ("Ms. Sellers") from November 18, 2009 until February 10, 2012 at a Macy's store in Memphis, Tennessee.

17.     Macy's and each of its affiliated companies take multiple measures to ensure their newly hired employees (i.e., those hired after the Solutions InSTORE Program was initially rolled out in 2003, hereafter "new hires") are aware of the Solutions InSTORE Program and are aware that, if they do not opt out of Step 4-Arbitration within thirty (30) days of their hire, they agree to arbitration.   For example, each of the following documents serves to educate the employee about the Solutions InSTORE Program:

•       the Solutions InSTORE Plan Document (**Exhibit A**);

•       the Solutions InSTORE Brochure (**Exhibit B**);

•       the Solutions InSTORE opt-out Election Form (**Exhibit C**);

•       the Solutions InSTORE New Hire Acknowledgement along with Ms. Sellers's electronic signature acknowledging receipt of same (**Exhibit D**);

•       the Solutions InSTORE website;

•       the Solutions InSTORE poster (**Exhibit E**); and

•       the new hire orientation video (**Exhibit F**).

18.     Macy's created a descriptive and explanatory Brochure regarding the Solutions InSTORE Program for dissemination to all new hires of Macy's.  This Brochure details the Solutions InSTORE Program.  The Brochure uses both graphics (such as charts and tables) and multiple pages of text to explain each step of the Solutions InSTORE Program in detail.  A true

and correct copy of the Brochure used for the 2007 Solutions InSTORE Program is attached as **Exhibit B.**

19.   The Solutions InSTORE Brochure contains: (1) a summary of certain provisions from the Plan Document, (2) an opt-out Election Form and (3) a copy of the Plan Document. The Brochure emphasizes, among other things, that the arbitration process is binding, covers most disputes related to the employee's employment, and is a waiver of the employee's right to a civil action and jury trial. The Brochure further explains that an employee may opt out of Step 4-Arbitration within thirty (30) days of his or her hire as follows:

**Step Four: the decision is yours**

Your Solutions InSTORE enrollment period will be your opportunity to decide whether you want to receive all four steps of this program.   You are automatically covered by Step 4 unless you choose to exclude yourself.   When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial.   If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided within 30 days of your hire date.

(**Exhibit B**, p. 10.)   The Brochure also advises employees: "More specific details are in the program's Plan Document, which is included here.   You should read it.   A copy of the Plan Document can also be obtained through www.employeeconnection.net, a request to your local

8

human resources representative, an email sent to solutions.instore@macys.com or by calling the Office of Solutions InSTORE at 1-866-285-6689." (Ex. B, p.10.)

20.    If a new hire wishes to opt out of Step 4 – Arbitration, all he or she has to do is complete an opt-out Election Form and mail it back to the Office of Solutions InSTORE in Ohio within thirty (30) days of his or her date of hire.  A true and correct copy of the opt-out Election Form is attached as **Exhibit C**.  Note that Exhibit C has the watermark "Exhibit" for purposes of this affidavit only.  The Election Form is stapled in the middle of the Solutions InSTORE Brochure.  The Election Form notifies the employee of her right to opt out of Step 4-Arbitration and explains that in order to opt out the employee must complete the Election Form and mail it back to the Office of Solutions InSTORE in Ohio.  See **Exhibit C**.

21.    Upon receipt of the Solutions InSTORE Brochure, the newly hired employee is required to physically or electronically sign a "Solutions InSTORE New Hire Acknowledgement".  By signing, the employee acknowledges that he or she has received the Brochure, understands that he or she has thirty (30) days to decide whether to opt out of Step 4-Arbitration, and can obtain further information about the program from a variety of sources, such as the Solutions InSTORE website.  To electronically sign the New Hire Acknowledgment, Ms. Sellers was prompted to enter her own social security number, date of birth, and zip code.  A true and correct copy of Ms. Sellers's Solutions InSTORE New Hire Acknowledgment form and confirmation of her electronic signature are attached as **Exhibit D**.

22.    Additionally, employees have access to a website that can be accessed by the employee on any computer whether at work or at home that provides employees with critical information about their employment, including among other things, corporate policies and procedures, benefits, wage information and work schedules.    The website,

www.employeeconnection.net, also provides information about the Solutions InSTORE Program. Similar to the Brochure, the Solutions InSTORE website uses both graphics and text to explain each step of the Solutions InSTORE Program in detail. The website also provides employees with access to the entire Solutions InSTORE Plan Document.

23.     The Office of Solutions InSTORE also gives each Macy's region/division copies of posters that explain the Solutions InSTORE Program's 4-step process. The posters are for the stores to display in an area frequented by employees. A true and correct (although not to scale) copy of the poster provided to the regions/divisions is attached as **Exhibit E**.

24.     Also, as part of a new employee's introduction to the company, Macy's requires that the Solutions InSTORE Program be covered as part of the orientation process. To that end, the Office of Solutions InSTORE provided each region/division with Solutions InSTORE new hire informational videos. Each store is directed to show the video to all employees during the new hire orientation. A true and correct copy of the video transcript is attached as **Exhibit F**.

### Ms. Sellers Did Not Return An Election Form To Opt Out of Step 4-Arbitration

25.     The Office of Solutions InSTORE has regular mail collection procedures designed to ensure that all opt-out Election Forms mailed to the Ohio address as instructed are recorded and accounted for. Macy's Credit and Customer Services, Inc. ("MCCS"), a division of Macy's, Inc., receives the Election Forms, opens them, and date-stamps them. After reviewing for completeness, MCCS records the employee's opt-out status into the PeopleSoft database, a database regularly used by the Office of Solutions InSTORE to record the opt-out status. The electronic information on the PeopleSoft database is maintained in the ordinary course of business and is accessed and used regularly by me and my team in the Office of Solutions InSTORE to implement and enforce the Solutions InSTORE Program.

26.     The PeopleSoft Human Resource System is a software database that includes employment information such as an employee's identification number, address, job code, title, location, dates of employment and other items.  Macy's customarily relies on the PeopleSoft Human Resource System and the information contained therein.  Access to the area of the PeopleSoft Human Resource System in which the employee's opt-out election is recorded is limited to viewing only by the staff of the Office of Solutions InSTORE and to a very limited number of individuals responsible for data input and system maintenance.

27.     MCCS sends the Election Forms to the Office of Solutions InSTORE where they are stored in file cabinets and organized by the Social Security number of the employees who have chosen to opt out of Step 4-Arbitration.  These records are maintained in the ordinary course of business and are customarily relied upon by me and the Office of Solutions InSTORE personnel in the performance of our job duties.

28.     I personally reviewed the PeopleSoft Human Resource database to determine whether Ms. Sellers returned an Election Form.  According to the database, she did not return an Election Form after beginning employment in November 2009.  I also personally reviewed the appropriate areas of the correct file cabinet (based on Ms. Sellers's social security number), and there was no Election Form returned by Ms. Sellers.

### Ms. Sellers Never Contacted the Office of Solutions InSTORE

29.     The Office of Solutions InSTORE maintains a toll-free phone number for employees to use if they have any questions concerning the Solutions InSTORE Program.  In addition, all employee contacts with the Office of Solutions InSTORE, whether by phone, voicemail, e-mail, or letter, are tracked and managed in an online recordkeeping system. If Ms. Sellers had contacted the Office of Solutions InSTORE at any time during her employment

11

concerning her inclusion in Step 4-Arbitration, or for any other reason, that contact would have been logged in our records.

30.     I directed my staff to review the database to determine whether Ms. Sellers ever contacted the Office of Solutions InSTORE.  The investigation revealed that Ms. Sellers never contacted the Office of Solutions InSTORE.

31.     The attached records are kept by Macy's in the regular course of business, and all of the attached records were prepared and compiled by Macy's personnel in the ordinary course of business at or near the time of the acts, conditions, or events recorded.  The attached copies are true and correct copies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _13th_ day of September, 2013, at Cincinnati, Ohio.


_Erin Coney_
Erin Coney

Sworn to and subscribed before me this _13_ day of September, 2013.


_Gail E. Somers_
[*notary's signature & seal*]

My commission expires: _June 17, 2016_.

GAIL E. **SOMERS**
Notary Public, **State of Ohio**
My **Commission Expires**
June 17, 2016

12



# PLAN DOCUMENT

### EARLY DISPUTE RESOLUTION

### RULES AND PROCEDURES

**January 1, 2007**

*If you need any accommodation to help you read and understand this
Solutions InSTORE Plan Document, please call the Office of Solutions InSTORE
at 1-866-285-6689.*

*Si le gustaría tener este Documento del Plan en español,
favor de llamar el numero 1-866-285-6689.*

Coney - Exhibit A





Solution InSTORE

Coney - Exhibit A

Macy's, Inc. and its subsidiaries and divisions (the "Company") care about their people. We know that from time to time Associates can have problems at work. And even routine differences can get bigger when there are no resources to help solve them.

In 2004, the Company set out to find a more effective way to resolve workplace disputes. We wanted a way that would benefit everyone involved. Our open door policy was a good place to start. Over the years, the Company has had a policy to help Associates handle problems by working with supervisors and/or Human Resources. To make this policy even better known and improve its effectiveness, the Company added new features. Together with Open Door they became our early dispute resolution program: Solutions InSTORE.

We are convinced that a full internal review of differences is the quickest and most productive way to resolve these disputes. It also maintains good working relationships and avoids unnecessary confrontations. So, Open Door (**Step 1**) continues to be the foundation of our program. It must be used before taking the next step.

If you are not satisfied with the result, you can request to have your issue reviewed by the Office of Senior Human Resources Management (**Step 2**). The Senior Vice President or another Human Resources executive who was not involved in the Open Door process will review your issue. They'll get back to you in writing. Steps 1 and 2 are available for any disputes relating to your employment with the Company.

If you are not satisfied with the result at Step 2, and you believe your situation involves legally protected rights, you can make a Request for Reconsideration (**Step 3**). Step 3 gives you the option, depending on the nature of your claim, of two methods to continue to seek resolution. One method is Peer Review. A panel of your peers decides the outcome of your dispute. The other method is review by a representative from The Office of Solutions InSTORE. This office is located in Macy's Employee Relations Department in Cincinnati.

In those relatively rare situations that, for whatever reason, your dispute cannot be resolved at Step 3 and you wish to pursue it further, Solutions InSTORE provides for a private, professional way to resolve it outside the company. You can request Arbitration (**Step 4**). This process involves an Arbitrator. The Arbitrator is a professional, neutral third-party selected by both you and the Company. After a hearing, the Arbitrator renders a final decision. The decision is binding on both the Company and you. Nothing in the Solutions InSTORE program, however, prevents you from filing, at any time, a charge or complaint with a government administrative agency like the EEOC, for example.

Coney - Exhibit A

All Associates agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company after the Effective Date. Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame. Until and unless an Associate elects to be excluded from arbitration within the prescribed time frame, the Associate is covered by Step 4 – Arbitration.

The following pages explain how Solutions InSTORE works.

Coney - Exhibit A

### Step 1 – Open Door

The Company's open door policy encourages Associates to try to resolve any problems at work with their immediate supervisors. If the Associate is unsatisfied with the immediate supervisor's response or needs to talk to someone other than the supervisor, the Associate may take the problem to the next higher level of supervision. Open Door also provides that the Associate may contact the Human Resources department for advice or assistance at any time.

### Step 2 – Review by the Office of Senior Human Resources Management

If the Associate is not satisfied with the result of Open Door (Step 1), the Associate may go to Step 2. To do that, the Associate files a written request for review with the Office of Senior Human Resources Management within thirty (30) days of the Step 1 decision. The complaint is referred to an appropriate HR executive, one who was not involved at Step 1, who will conduct an impartial investigation. A written decision is then issued generally within forty-five (45) days of receiving the complaint. Along with the decision are instructions for pursuing Step 3 if the Associate is not satisfied with the results of Step 2.

Steps 1 and 2 are available for any disputes relating to your employment at the Company. Steps 3 and 4 are available only for claims involving legally protected rights. "Legally protected rights" means claims the Associate could raise in a court or before an administrative agency.

Coney - Exhibit A

### Step 3 – Request for Reconsideration

For claims involving legally protected rights,if the Associate is not satisfied with the results of Step 2, the Associate may go to Step 3. To do that, the Associate contacts the Office of Solutions InSTORE within thirty (30) days of the Step 2 decision to file a written Request for Reconsideration. Step 3 involves two features the Associate may consider:

#### 1 – Peer Review

Peer Review is available if the Associate's claim involves:

• A final warning or the final phase of written commitment to change or improve a performance issue, or
• Termination of employment,

and does not involve issues claiming harassment, discrimination, a reduction in force, layoff, or alleged statutory violations. If the Associate chooses Peer Review, a representative from The Office of Solutions InSTORE gives the Associate contact information for a division facilitator. The Associate has ten (10) days to contact the facilitator. The facilitator arranges for a panel proceeding. A volunteer panel is assembled to review the Associate's complaint and render a decision. This panel consists of peers from the Associate's level, one (1) from the next level and one (1) non-voting facilitator to manage the process. Numbers of panelists may vary by division, region or location. Panels always consist of at least three (3) voting members. The panel is assembled to review the Associate's complaint. A response is given within five (5) days of the conclusion of the panel proceedings.

A decision of the Peer Review panel that upholds the Associate's claim is final and binding on the Company. If the panel denies the Associate's claim, the Company will let the Associate know the procedures for continuing on to Step 4.

#### 2 – Review by the Office of Solutions InSTORE

This feature is available for all claims involving legally protected rights. If the Associate chooses review by the Office of Solutions InSTORE, the Solutions InSTORE Program Manager will send to the Associate a confirmation that the complaint was received. A representative of the Office of Solutions InSTORE then conducts an investigation and provides the Associate with a decision in writing. The decision is generally provided within forty-five (45) days of receiving the complaint. A decision that upholds the Associate's claim is final and binding on the Company. But a decision denying the Associate's claim in any way may be challenged by requesting arbitration under Step 4. If the claim is denied, the company will let the Associate know the procedures for continuing on to Step 4.

---

Coney - Exhibit A

### Step 4 – Arbitration Rules and Procedures

**Article 1 – Individuals Covered**

This Plan Document applies, as of the Effective Date provided in Article 4, to the following individuals, provided that they are not covered by a collective bargaining agreement with Macy's:

**a. Newly Hired Associates**

All Associates hired by Macy's with a first day of employment on or after January 1, 2007.

**b. Covered May Associates**

Associates whose employment with Macy's relates to the merger of The MAY Department Stores Company with and into Macy's, Inc. on August 30, 2005 (the "Merger"), as defined in i and ii below:

i. Former MAY Associates continuously employed by Macy's Retail Holdings, Inc., formerly known as The MAY Department Stores Company, between August 30, 2005 and January 1, 2007

ii. Any Associate hired with a first day of employment before January 1, 2007 by a Macy's division or subsidiary or operating unit that was an affiliate of MAY before the Merger (e.g., a store, a distribution center, a call center, etc.)

*"Macy's" means any division or subsidiary or operating unit or entity related to Macy's, Inc.*

All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3. However, Arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame. Issues at Step 4 are decided by a professional from the American Arbitration Association in an arbitration process, rather than in a court process. Arbitration thus replaces any right you might have to go to court and try your claims before a jury. You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration. Whether you choose to remain covered by arbitration or to exclude yourself has no negative effect on your employment.

Coney - Exhibit A

Any Associate who experiences a break in service with the Company of sixty (60) days or less, or who transfers from one subsidiary, division or affiliated Macy's Company to another, remains covered by Arbitration, unless the Associate previously excluded himself during the prescribed time period. If the Associate becomes re-employed with the Company following a break in service greater than sixty (60) days, the Associate is treated as a new hire and is given the opportunity to elect to be excluded from arbitration during the prescribed time period.

**Article 2 – Claims Subject to or Excluded from Arbitration**

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration. Arbitration is administered by the American Arbitration Association ("AAA") under these Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures. Arbitration is held before a neutral, third-party Arbitrator. The Arbitrator is selected in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures. If there are any differences between the Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures, the Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply.

Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company. Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.

All unasserted employment-related claims as of January 1, 2007 arising under federal, state or local statutory or common law, shall be subject to arbitration. Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. §  1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, state discrimination statutes, state statutes, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious

Coney - Exhibit A

prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Claims by Associates that are required to be processed under a different procedure pursuant to the terms of an employee pension plan or employee benefit plan shall not be subject to arbitration under Step 4. Claims by Associates for state employment insurance (<u>e.g.</u>, unemployment compensa-tion, workers' compensation, worker disability compensation) or under the National Labor Relations Act are also not subject to Arbitration under Step 4. Statutory or common law claims made outside of the state employment insurance system alleging that the Company retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration.

Nothing in these Solutions InSTORE Early Dispute Resolution Rules and Procedures prohibits an Associate from filing at any time, a charge or complaint with a government agency such as the EEOC. However, upon receipt of a right to sue letter or similar administrative determination, the Associate's claim becomes subject to arbitration as defined herein.

**Article 3 – Dismissal/Stay of Court Proceeding**

By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration under Step 4, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration, assuming the earlier steps have been exhausted. The Arbitrator's decision on the arbitrable claims, including any determinations as to disputed factual or legal issues, shall be entitled to full force and effect in any later court lawsuit on any nonarbitrable claims.

**Article 4 – Effective Date**

As to any Individuals Covered (as defined in Article 1), the Solutions InSTORE program is effective January 1, 2007.

Coney - Exhibit A

**Article 5 – Time Limit to Initiate Arbitration**

Arbitration must be initiated in accordance with the time limits contained in the applicable law's statute of limitations. The period of time elapsed during which the Associate pursued his or her claims under Steps 1-3 of this Program is added on to the applicable limitations period.

**Article 6 – Commencement of Arbitration**

To initiate arbitration, the Associate or Company must give written notice to the other party and/or person who is alleged to be liable in the dispute ("Claimant"). Notice to the Company must be given to the Office of Solutions InSTORE.

Notice to the Associate must be given by mailing to the Associate's last known home address.

The notice shall include a statement of the nature of the claim together with a brief description of the relevant facts, the remedies including any amount of damages being sought, and the address which the Claimant will use for the purpose of the arbitration.

Within thirty (30) days after notice of a dispute is given, the other party shall give its response ("Respondent"). The response shall state all available defenses, a brief description of relevant facts and any related counterclaims then known.

Within thirty (30) days after such counterclaims are given, the Claimant shall give Respondent a brief statement of the claimant's defenses to and relevant facts relating to the counterclaims.

Claims and counterclaims may be amended before selection of the arbitrator and thereafter with the arbitrator's consent. Notices of defenses or replies to amended claims or counterclaims shall be delivered to the other party within the thirty (30) days after the amendment.

**Article 7 – Selection of an Arbitrator**

Both the Company and the Associate shall participate equally in the selection of an Arbitrator to decide the arbitration. After receiving and/or filing an Arbitration Request Form, the Solutions InSTORE Program Manager shall ask the American Arbitration Association to provide the Company and the Associate a panel of seven (7) neutral arbitrators with experience deciding employment disputes.

---

Coney - Exhibit A

The Company and the Associate then shall have the opportunity to review the background of the arbitrators by examining the materials provided by the American Arbitration Association. Within seven (7) calendar days after the panel composition is received, the Associate and the Company shall take turns striking unacceptable arbitrators from the panel until only one remains. The Associate and the Company will inform the American Arbitration Association of the remaining arbitrator who will decide the dispute. However, if both parties agree that the remaining arbitrator is unacceptable, a second panel will be requested from the American Arbitration Association and the selection process will begin again. If both parties agree no one on the second panel is acceptable, either party may request the American Arbitration Association to simply appoint an Arbitrator who was not on either panel.

### Article 8 – Time and Place of Arbitration

The arbitration hearing shall be held at a location within fifty (50) miles of the Associate's last place of employment with the Company, unless the parties agree otherwise. The Parties and the Arbitrator shall make every effort to see that the arbitration is completed, and a decision rendered, as soon as possible. There shall be no extensions of time or delays of an arbitration hearing except in cases where both Parties consent to the extension or delay, or where the Arbitrator finds such a delay or extension necessary to resolve a discovery dispute or other matter relevant to the arbitration.

### Article 9 – Right to Representation

Both the Associate and the Company shall have the right to be represented by an attorney. If the Associate elects not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings.

### Article 10 – Discovery

#### a. Initial Disclosure

Within fourteen (14) calendar days following the appointment of an Arbitrator, the Parties shall provide each other with copies of all documents upon which they rely in support of their claims or defenses. However, the parties need not provide privileged documents that are protected from disclosure because they involve attorney-client, doctor-patient or other legally privileged or protected communications or materials. Throughout the discovery phase, each party shall provide the other party with any and all such documents relevant to any claim or defense.

Coney - Exhibit A

Upon written request, the Associate shall be entitled to a copy of all documents (except privileged documents as described above) in the Associate's "PERSONNEL FILE."

**b. Other Discovery**

### i. Interrogatories/Document Requests

Each party may propound one (1) set of twenty (20) interrogatories (including subparts) to the other party. Interrogatories are written questions asked by one party to the other, the recipient must answer under oath. Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories. Answers to interrogatories must be served within twenty-one (21) calendar days of receipt of the interrogatories.

### ii. Depositions

A deposition is a statement under oath that is given by one party in response to specific questions from the other party. It is usually recorded or transcribed by a court reporter. Each party shall be entitled to take the deposition of up to three (3) relevant individuals of the party's choosing. he party taking the deposition shall be responsible for all associated costs, such as the cost of a court reporter and the cost of a transcript.

### iii. Additional Discovery

Upon the request of any party and a showing of appropriate justification, the Arbitrator may permit additional relevant discovery, if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay the conclusion of the arbitration.

**c. Discovery Disputes**

The Arbitrator shall decide all disputes related to discovery. Such decisions shall be final and binding on the parties. In ruling on discovery disputes, the arbitrator need not follow but may consult the discovery rules contained in the Federal Rules of Civil Procedure.

**d. Time for Completion of Discovery**

All discovery must be completed within ninety (90) calendar days after the selection of the Arbitrator, except for good cause shown as determined by the Arbitrator. In order to expedite the arbitration, the parties may initiate discovery prior to the appointment of the Arbitrator.

Coney - Exhibit A

**Article 11 – Hearing Procedure**

**a. Witnesses**

Witnesses shall testify under oath, and the Arbitrator shall afford each party a sufficient opportunity to examine its own witnesses and cross-examine witnesses of the other party. Either party may issue subpoenas compelling the attendance of any other person necessary for the issuing party to prove its case.

**i. Subpoenas**

A *subpoena* is a command to an individual to appear at a certain place and time and give testimony. A *subpoena* also may require that the individual bring documents when he or she gives testimony. To the extent authorized by law, the Arbitrator shall have the authority to enforce and/or cancel such subpoenas. *Subpoenas* must be issued no less than ten (10) calendar days before the beginning of an arbitration hearing or deposition.

The party issuing the *subpoena* shall be responsible for the fees and expenses associated with the issuance and enforcement of the subpoena, and with the attendance of the subpoenaed witness at the arbitration hearing.

**ii. Sequestration**

The Arbitrator shall ensure that all witnesses who testify at the arbitration are not influenced by the testimony of other witnesses. Accordingly, unless the Arbitrator finds cause to proceed in a different fashion, the Arbitrator shall sequester all witnesses who will testify at the arbitration, however, the Arbitrator shall permit the Associate involved in the arbitration and the Company's designated representative to remain throughout the arbitration, even though they may or may not testify at the hearing.

**b. Evidence**

The parties may offer evidence that is relevant and material to the dispute and shall produce any and all non-privileged evidence that the Arbitrator deems necessary to a determination of the dispute. The Arbitrator need not specifically follow the Federal Rules of Evidence, although they may be consulted to resolve questions regarding the admissibility of particular matters.

Coney - Exhibit A

### c. Burden of Proof

Unless the applicable law provides otherwise, the party requesting arbitration or the party filing a counterclaim has the burden of proving a claim or claims by a preponderance of the evidence. To prevail, the party bringing the arbitration must prove that the other's conduct was a violation of applicable law.

### d. Briefing

Each party shall have the opportunity to submit one (1) dispositive motion, one (1) pre-hearing brief, and one (1) post-hearing brief, which is a written statement of facts and law, in support of its position. Submission of such briefs is not required, however, briefs shall be typed and shall be limited in length to twenty (20) double-spaced pages.

### e. Transcription

The parties may arrange for transcription of the arbitration by a certified reporter. The party requesting transcription shall pay for the cost of transcription.

### f. Consolidation

#### i. Claims

The Arbitrator shall have the power to hear as many claims as a Claimant may have consistent with Article 2 of these Solutions InSTORE Early Dispute Resolution Rules and Procedures.

The Arbitrator may hear additional claims that were not mentioned in the Arbitration Request Form. To add claims, the Claimant must notify the other party at least thirty (30) calendar days prior to a scheduled arbitration. The additional claims must be timely, under the applicable law, as of the date on which they are added. The other party must not be prejudiced in its defense by such addition.

#### ii. Parties

The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding. Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action. (A class or collective action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group).

Coney - Exhibit A

**g. Confidentiality**

All aspects of an arbitration pursuant to these Solutions InSTORE Early Dispute Resolution Rules and Procedures, including the hearing and recording of the proceeding, shall be confidential and shall not be open to the public. The only exceptions are : (i) to the extent both parties agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between the parties: or (iii) as may otherwise be appropriate in response to a governmental agency, legal process, or as required by law.

All settlement negotiations, mediations, and any results shall be confidential.

**Article 12 – Substantive Choice of Law**

The Arbitrator shall apply the substantive law, including the conflicts of law, of the state in which the Associate is or was employed. For claims or defenses arising under or governed by federal law, the Arbitrator shall follow the substantive law as set forth by the United States Supreme Court. If there is no controlling United States Supreme Court authority, the Arbitrator shall follow the substantive law that would be applied by the United States Court of Appeals and the United States District Court for the District in which the Associate is or was employed.

**Article 13 – Arbitrator Authority**

The Arbitrator shall conduct the arbitration. The arbitrator shall have the authority to render a decision in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures, and in a manner designed to promote rapid and fair resolution of disputes.

The Arbitrator's authority shall be limited to deciding the case submitted by the party bringing the arbitration. Therefore, no decision by any Arbitrator shall serve as precedent in other arbitrations.

The arbitration procedure contained herein does not alter the Associate's employment status. The status remains alterable at the discretion of the Company and/or terminable at any time, at the will of either the Associate or the Company, with or without cause or prior notice. Accordingly, the Arbitrator shall have no authority to alter the Associate's employment status by, for example, requiring that the Company have "cause" to discipline or discharge an Associate. Nor may the arbitrator otherwise change the terms and conditions of employment of an Associate unless required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate.

Coney - Exhibit A

The Arbitrator shall have the power to award sanctions against a party for such party's failure to comply with these Solutions InSTORE Early Dispute Resolution Rules and Procedures or with an order of the Arbitrator. These sanctions may include assessment of costs or prohibitions of evidence. If justified by a party's wanton or willful disregard of these Solutions InSTORE Early Dispute Resolution Rules and Procedures, the Arbitrator may award the sanction of an adverse ruling in the arbitration against the party who has failed to comply.

**Article 14 – Award**

Within thirty (30) calendar days after the later of the close of the hearing or the receipt of post-hearing briefs, if any, the Arbitrator shall mail to the parties a written decision. The decision shall specify appropriate remedies, if any, if a violation of law is found. If the Associate's claim arises under federal or state statutory law, the award should include findings of fact and conclusions of law; otherwise, the inclusion of such findings and conclusion is at the Arbitrator's discretion. The parties to an arbitration shall be provided with a copy of the Arbitrator's award.

**Article 15 – Fees and Expenses**

    **a. Costs Other Than Attorney Fees**

        **i. Definitions**

        Costs of an arbitration include the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees charged by the AAA, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held. Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

        **ii. Filing Fee/Costs of Arbitration**

        An Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less. Upon filing the request for arbitration, the Associate shall remit such fee. The Company shall pay the remainder of the costs of the arbitration. The Company shall pay the entire filing fee should it initiate arbitration. Except as provided below, each party shall pay its own incidental costs, including attorney's fees.

        The AAA has developed guidelines for waiving administrative fees. This Plan is subject to those guidelines.

Coney - Exhibit A

**b. Reimbursement for Legal Fees or Costs**

The program does not infringe on either party's right to consult with an attorney at any time. In fact, the Company will reimburse an Associate for this legal consultation and/or representation during Step 4 of the program, at a maximum benefit of Two Thousand Five Hundred Dollars ($2,500) per Associate in a rolling twelve (12) month period. If the Associate is not represented by counsel, the Company will reimburse an Associate for incidental costs up to a maximum of Five Hundred Dollars ($500) per Associate in a rolling twelve (12) month period. The Associate will not be entitled to such reimbursement by the Company if the Arbitrator determines the arbitration claim by the Associate was frivolously filed. Any reimbursement to the Associate will occur following the conclusion of the proceedings upon submission of the Associate's bills for costs of legal services or incidental costs.

**c. Shifting of Costs**

If the Associate prevails in arbitration, whether or not monetary damages or remedies are awarded, the filing fee shall be refunded to the Associate. The Arbitrator may (based on the facts and circumstances) also require that the Company pay the Associate's share of the costs of arbitration and incidental costs.

## Article 16 – Remedies and Damages

Upon a finding that a party has sustained its burden of persuasion in establishing a violation of applicable law, the Arbitrator shall have the same power and authority as would a judge to grant any relief, including costs and attorney's fees, that a court could grant, in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction.

## Article 17 – Settlement

The parties may settle their dispute at any time without involvement of the Arbitrator.

Coney - Exhibit A

**Article 18 – Enforceability**

The arbitration agreement, the arbitration proceedings, and any award rendered pursuant to them shall be interpreted under, enforceable in accordance with, and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. regardless of the state in which the arbitration is held or the substantive law applied in the arbitration. If for any reason the Federal Arbitration Act is inapplicable to enforce this agreement, the Parties agree it will be enforced under the governing state arbitration statute(s).

**Article 19 – Appeal Rights**

The decision rendered by the Arbitrator shall be final and binding as to both the Associate and the Company. Either party may appeal the Arbitrator's decision to a court in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

**Article 20 – Severability/Conflict with Law**

In the event that any of these Solutions InSTORE Early Dispute Resolution Rules and Procedures are held to be unlawful or unenforceable, the conflicting rule or procedure shall be modified automatically to comply with applicable law.

In the event of an automatic modification with respect to a particular rule or procedure, the remainder of these rules and procedures shall not be affected. An automatic modification of one of these rules or procedures shall apply only in regard to the particular jurisdiction and dispute in which the rule or procedure was determined to be in conflict with applicable law. In all other jurisdictions and disputes, these Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply in full force and effect.

**Article 21 – Cancellation or Modification of Dispute Resolution Rules and Procedures or Program**

The Company may alter these Solutions InSTORE Early Dispute Resolution Rules and Procedures or cancel the program in its entirety upon giving thirty (30) days written notice to Associates. If such notice is not provided to an Associate, the Solutions InSTORE Early Dispute Resolution Rules and Procedures that covered the Associate prior to the modification or cancellation shall govern.

Coney - Exhibit A

**Article 22 – Change in Control of Macy's**

A change in control of the Company shall nullify and cancel the Associate's agreement to be covered by Step 4 – Arbitration, respecting any claims the Associate may have arising after such change. A change in control will be deemed to have occurred if:

   i. Macy's is merged, consolidated, or reorganized into or with another corporation or other legal entity unaffiliated with Macy's, resulting in less than a majority of the combined voting power of the then-outstanding securities of the surviving or resulting corporation or entity immediately after such transaction being held in the aggregate by those who were entitled to vote in the election of directors of Macy's (the "Voting Stock") immediately prior to such transaction; or

  ii. Macy's sells or otherwise transfers substantially all of its assets to another corporation or other legal entity and, as a result of such sale or transfer, less than a majority of the combined voting power of the then-outstanding securities of such other corporation or entity immediately after such sale or transfer is held in the aggregate by the holders of Voting Stock of Macy's immediately prior to such sale or transfer.

**Article 23 – Sale of Subsidiary or Division or Operating Unit**

Should Macy's sell a subsidiary or division or operating unit of a subsidiary (through the sale of stock or substantially all of its assets) and such transaction includes transferring Associates to a third-party, a transferring Associate's agreement to arbitration under this program shall remain in effect as to any Employment-Related Claims arising prior to such sale but only as to claims against Macy's or its subsidiaries or divisions and shall be null and void as to any such third-party.

**Office of Solutions InSTORE**
Macy's, Inc.
7 West Seventh Street
Cincinnati, OH 45202
Toll Free Number: 866-285-6689
Email: solutions.instore@macys.com


Coney - Exhibit A

Coney - Exhibit B



**Solutions**
In·STORE
Early Resolution → Positive Workplace









early dispute

# resolution

Macy's, Inc.





★ b

**Office of Solutions InSTORE**
Macy's, Inc.
7 West Seventh Street
Cincinnati, OH 45202
Toll Free Number: 866-285-6689
Email: solutions.instore@macys.com

Dear Associate:

Welcome to Macy's, Inc.!

I am excited that you have joined our team and am looking forward to the expertise you will bring to your new position and the innovative ideas you will contribute to our Company.

Here at Macy's, Inc. we are committed to providing a positive work environment — a workplace that people enjoy and are proud to come to each and every day. At Macy's, we actively look for ways to encourage a positive atmosphere – to create a workplace that our associates can benefit from….one that is friendly, fun and **fair**.

To achieve this, we have embraced an "Open Door" culture. Simply put, *we are committed to listening* to you. You are encouraged to share what is on your mind with your management team - many of our best ideas have come from our associates. The "Open Door" for our associates not only includes the opportunity to share unique perspectives, but also work-related concerns, should they arise.

"Open Door" is not only a culture at Macy's, it is the first step in a Program called **Solutions InSTORE**. Solutions InSTORE is the process we use to get work-related concerns resolved. Our associates enjoy the opportunity to speak openly with their managers and expect and deserve thoughtful and complete responses. Solutions InSTORE offers a structured way to resolve any concern, large or small.

What makes **Solutions InSTORE** so outstanding? Our employees have told us that they appreciate the opportunity to resolve issues **quickly** - and in a fair manner.

Please spend the time it takes to review this Brochure about **Solutions InSTORE**. I'm confident that the more you learn about it, the more you'll agree — it's a smart way to resolve concerns and a valuable benefit for all of us at Macy's.

So, welcome to Macy's … welcome to your new work environment.…
Welcome to **Solutions InSTORE.**

Sincerely,



Terry J. Lundgren



macy's inc

Coney - Exhibit B

---



**Solutions**
In•STORE

Early Resolution → Positive Workplace

**NOTICE OF AN ADMINISTRATIVE CHANGE TO STEP 2 PROCESS ONLY**

Due to the My Macy's reorganization, the Step 2 – Review by the Office of Senior Human Resources Management and the divisional SVP of Human Resources no longer exist at the stores (exception: Bloomingdale's and Support entities). As a result, effective May 26, 2009, all Step 2 requests for review will be managed by Corporate Associate Relations. Depending on whether you work at a store or a support division, your Step 2 claim will be referred to a Regional Vice President of Associate Relations or to the Senior Vice President of Human Resources. This executive, or a designee who was not involved at Step 1, will conduct an impartial investigation. All references in the Solutions InSTORE Plan Document, brochures, website or other materials to the Office of Senior Human Resources Management generally and the SVP of Human Resources with regard to Macy's stores should be replaced with the Office of Senior Human Resources Executive. In all other regards, the Step 2 process remains unchanged.

Effective May 26, 2009, your written Step 2 claims should be mailed to:

Macy's
Manager of Step 2 Claims
P.O. Box 5355
Cincinnati, OH 45201-5355

Coney - Exhibit B

# Early Resolution, Positive Work Place

**A** t Macy's, we believe in building strong work relationships. These relationships allow us to learn from each other, give us a sense of community and greatly contribute to our job satisfaction. But just like at home, we need to take care of our relationships. That means when we have disagreements at work, we give them our immediate attention. Left unresolved, these conflicts can damage relationships, distract us from doing our jobs and occasionally even lead to costly and upsetting litigation. That's why we are proud to share with you our Early Dispute Resolution program. This program, called Solutions InSTORE, is a four-step process that gives us a positive way to solve workplace disputes. It provides additional steps, as needed, to encourage problem solving at the earliest possible level.

# Solutions InSTORE



## Program Steps:

**4** ARBITRATION

**3** REQUEST FOR RECONSIDERATION

**2** OFFICE OF YOUR SENIOR HUMAN RESOURCES MANAGEMENT

**1** OPEN DOOR

OFFICE OF SOLUTIONS INSTORE

PEER PANEL

**Step 1: Open Door** – an informal way to discuss your problem with your supervisor or any other member of your local management team (e.g., Store or Facility Manager, HR Representative).

**Step 2: Office of Your Divisional Senior Human Resources Management** – a written complaint sent to your division's most senior Human Resources office where it is reviewed by an HR professional who was not previously involved in the Open Door decision.

**Step 3: Request for Reconsideration** – a formal review of eligible claims using one of the following two features *(both are impartial and independent of your division management)*:

• **Peer Panel:** A panel of people in similar positions to you ("peers") within your division, or

• **Office of Solutions InSTORE:** An executive who works with the Solutions InSTORE office, located in Cincinnati, Ohio.

**Step 4: Arbitration** – A formal review of your complaint, similar to a court proceeding, but decided by an independent "arbitrator" who is approved by the American Arbitration Association (AAA), and is not an employee of our Company.

## KEY POINTS:

**1:** Steps 1 and 2 are available for all kinds of workplace disputes, big or small (see page 6 for examples).

**2:** You drive the process – the Company is bound by the decision at every step, but you decide whether you are satisfied or would like to proceed to the next steps.

**3:** Only the more serious kinds of disputes (that would otherwise be considered in a court of law), such as wrongful termination, can be advanced to Steps 3 or 4.

**4:** If you take your dispute all the way to Step 4, you and the Company are bound by the decision of the independent arbitrator.

**5:** Respect for your privacy and confidentiality are key features of this program. With Solutions InSTORE, you can be certain that the issue will remain confidential. Only those with a business need to know will be involved.

Coney - Exhibit B



# For the Benefit of All

**W**ith Solutions InSTORE, we have a program that reinforces the value of each Associate as well as the importance of really listening to each other and understanding our different points of view. As always, we want to provide the very Best Work Environment. When we designed the program originally, we talked to many leading companies that have introduced successful ways to resolve workplace disputes. We learned that there are many time-tested programs out there and each one is a little different. Finally, we studied our own employee population and designed the steps that we thought would work best for our diverse workforce.

For a company of our size, we are fortunate to have very few employment-related lawsuits. However, in those rare instances when one does occur, it is almost always disruptive, time-consuming and costly for everyone involved. We would much rather see our Company's resources used more productively on programs that benefit all our Associates.

## HERE'S WHY THIS SPECIAL PROGRAM BENEFITS YOU, OUR COMPANY AND OUR CUSTOMERS:

**IT'S FAIR.**
Solutions InSTORE offers you multiple opportunities to have your dispute heard by a third party – some are close to your situation and others are more removed. You decide whether to accept the outcome of each step or move to the next one – as long as it's appropriate for your type of dispute.

**IT PRESERVES WORK RELATIONSHIPS.**
By creating a way for everyone to work out differences respectfully, Solutions InSTORE lets you build solid relationships and grow in your job.

**IT KEEPS YOU MORE SATISFIED WITH YOUR WORK EXPERIENCE.**
Hopefully, if you have good work relationships with your manager and coworkers and the opportunity to learn new skills, you will continue to stay happily employed in our Company.

**IT'S QUICK.**
There are timing guidelines at each step so disputes shouldn't drag on. You always get answers to your questions, and the process is designed to move your dispute along quickly.

**IT'S LESS EXPENSIVE FOR YOU AND THE COMPANY.**
Even if your dispute ends up in arbitration, you pay only a small percentage of the arbitration costs. And, if the arbitrator rules in your favor, the Company pays 100% of all arbitration costs. There is even legal financial assistance available to you from the Company. For both you and the Company, Solutions InSTORE is much less costly than arguing a case in court.

**IT'S CONFIDENTIAL.**
Everyone involved in Solutions InSTORE is committed to keeping all disputes confidential. This means we involve only those with a business need to know.

**IT'S FREE OF RETALIATION.**
Retaliation, in any form, is something the Company will not tolerate. You can count on it!



Coney - Exhibit B

# Office of Your Senior Human Resources Management

**S** tep 2 still takes place within your division but it is more formal than Open Door. In this step, your dispute is referred to your division's most Senior Human Resources professionals for a thorough review.

**KEY POINTS:**

*What's Covered Under Steps 1 & 2 of Solutions InSTORE*

*All kinds of issues – big or small – including:*

- *Disputes about vacation time or absence from work*
- *Pay disputes and performance issues*
- *Personality conflicts that affect job performance*
- *Concerns about discrimination or sexual harassment*
- *Performance concerns and termination*



**How Step 2 Works:**

| MAKE A WRITTEN COMPLAINT TO DIVISION'S SENIOR HR MANAGEMENT | COMPLAINT REFERRED TO APPROPRIATE HR EXECUTIVE | HR EXECUTIVE COMPLETES INVESTIGATION AND PREPARES A RESPONSE | IF NOT SATISFIED, GO TO STEP 3 |
|---|---|---|---|
| You make a written complaint to your division's Senior Human Resources Management within 30 days of the Open Door decision | Your complaint is referred to an appropriate Human Resources executive who was not involved in your Step 1 decision | A Human Resources executive completes the investigation and prepares a response to you | If you are not satisfied, you can proceed to Step 3 as long as your dispute could be considered in a court of law, for example, in cases of perceived discrimination or harassment |

---

# Open Door

**O** pen Door is the starting point for most disputes. In the majority of cases, it will also be the ending point – where your concerns are discussed and resolved to your satisfaction.

Under the Open Door, you are encouraged to discuss your situation with your supervisor since he or she usually knows you the best and can most likely resolve your concern. If you feel more comfortable, you can discuss your concern with another member of local management (for example, another member of your management team like your Store or Facility Manager or your Human Resources Representative).

Open Door is usually successful because we are problem-solving at a very early stage and you have access to supervisors and managers who know you and understand your issues.

If this process does not work for you, for whatever reason, you may proceed to Step 2 by submitting a written request to the office of your Senior Human Resources Management in your division's corporate office.

**How Step 1 Works:**

| BRING DISPUTE TO SUPERVISOR OR OTHER MEMBER OF YOUR MANAGEMENT TEAM | SUPERVISOR RESPONDS | IF NOT SATISFIED, GO TO STEP 2 |
|---|---|---|
| You bring your dispute to your supervisor or to a member of your local Human Resources or management team | Supervisor/Human Resources management responds verbally back to you in a reasonable time frame | If you are not satisfied with the response, you can go to Step 2 |



**Step Three:**

# Request for Reconsideration

If you're not satisfied with the results of Step 2 and your claim could otherwise be considered in a court of law, you may proceed to Step 3 — Request for Reconsideration. In this step, you have two very different features to consider for your claim. Call the Solutions InSTORE office to make arrangements for your request to be handled by the most appropriate process, either:

REVIEW BY A PEER PANEL  **OR**  REVIEW BY THE OFFICE OF SOLUTIONS INSTORE

### REVIEW BY A PEER PANEL

The Peer Review process gives you a chance to take your case to a panel of people just like you. Because peer panelists are generally from your location or region and have similar jobs, they are uniquely qualified to understand your dispute. The panel usually includes three volunteer panelists (two at your level and one at the next higher level) and one facilitator who helps direct the process, but does not vote on the outcome of the claim. The Company is so confident that these Associates will look at your situation with care and use good judgment that it is willing to abide by the panel's decision.

The Peer Panel process is available for most disputes related to:
• an Associate's final phase of written commitment to change or improve a performance issue, or
• termination of employment

Exceptions include claims related to layoffs, harassment, and discrimination – claims that would benefit from a review by a trained professional. Step 3 claims like these are directed for review by an executive of the Office of Solutions InSTORE.

### KEY POINTS:

*Employees who volunteer and meet the criteria to become a member of the peer panelist team for their location or region, receive specialized training when they are randomly selected to serve on a panel. This training gives panelists confidence in their role and prepares them with the skills needed to make the most appropriate decision when determining a response to a claim.*

### KEY POINTS:

**1:** *Any type of dispute that could be heard in a court of law, including if you feel you were overlooked for a promotion or discriminated against because of race or age; or if you believe you've been the subject of sexual harassment, or terminated improperly is appropriate for Steps 3 and 4.*

**2:** *The staff of the Office of Solutions InSTORE, (which is located in Cincinnati, Ohio) is available to assist you should your claim proceed to Steps 3 and 4 of the Solutions InSTORE program. When calling, you can speak confidentially to a professional who can answer questions or provide information about the program and how it works.*

### REVIEW BY OFFICE OF SOLUTIONS INSTORE

If at Step 3 you prefer your claim to be heard by an employee relations professional, or if it falls outside of what can be reviewed by a Peer Panel, you may take it to the Macy's Corporate Office of Solutions InSTORE. The program manager of Solutions InSTORE is responsible for conducting a thorough investigation, gathering information from you and other witnesses involved in your situation. You will receive a decision in writing within a reasonable time frame from the day your complaint is received, generally within 45 days. If you are not satisfied with the decision, you may proceed to Step 4.

### MORE ABOUT THE OFFICE OF SOLUTIONS INSTORE

When deciding to file a claim at Step 3, you will speak to a member of the Office of Solutions InSTORE who will help you decide which Step 3 feature(s) applies to your claim. Once you determine between the Peer Panel or Review by the Office of Solutions InSTORE, a member of the Solutions InSTORE staff will guide you through the process to ensure your claim receives the proper review.

If you receive a decision for your Step 3 claim that you are still not satisfied with, the Solutions InSTORE staff will also help guide you through Step 4 – Arbitration.

**For assistance with a Step 3 claim, you can contact the Office of Solutions InSTORE by calling 1-866-285-6689.**

## How Step 3 Works:

| CONTACT SOLUTIONS INSTORE OFFICE | SELECT EITHER PEER REVIEW OR REVIEW BY THE OFFICE OF SOLUTIONS INSTORE | REVIEW IS CONDUCTED | IF NOT SATISFIED, GO TO STEP 4 |
|---|---|---|---|
| You contact the Solutions InSTORE office | With the office, determine which Step 3 feature, Peer Review or Review by the Office of Solutions InSTORE is appropriate for your claim | The review is conducted either by a Peer Panel or by the Office of Solutions InSTORE | While the Company is bound by the decision, if you are not satisfied with the results of this process, you can proceed to Step 4 |

Coney - Exhibit B

7

Coney - Exhibit B

## STEP 4: arbitration / court of law (national perspective)

| | STEP 4: arbitration | court of law (national perspective) |
|---|---|---|
| **WHO HEARS MY CLAIM?** | An independent arbitrator from outside the Company, specially qualified to hear employment related disputes. For example, retired judges may serve in this role. | A judge who must not specialize in employment law or jury who is completely unfamiliar with and has no specific training in employment law. |
| **HOW QUICKLY CAN MY DISPUTE BE RESOLVED?** | Most arbitration processes take less than 12 months to complete, from filing to hearing. That means you will be able to have a final resolution much faster. | In a court of law, your claim will typically take much longer to resolve. Nationwide, employment cases often last from 1 to 5 years, depending on the facts. |
| **WHAT IS THE COST TO FILE A CLAIM?** | A percent of your pay, however, in no case will you pay more than $125. | The current fee to file your claim in federal district court is $350, and if further appeals are required additional fees apply. Many state courts have filing fees of $150 or more. |
| **DO I GET ANY KIND OF LEGAL FINANCIAL BENEFIT?** | You can receive up to $2,500 for rolling calendar year. | None |
| **AM I REQUIRED TO HAVE AN ATTORNEY?** | No, but you can if you want. It is your choice. The tone of an Arbitration proceeding is much less formal than a court of law, even though it can have the same results. Many employees choose to represent themselves. And if you choose not to bring an attorney, the Company won't either. | While you can represent yourself in a court of law, the legal system is much more formal and complex, often requiring you to obtain legal representation to manage through the system. |

## Step Four: the decision is yours

Your Solutions InSTORE enrollment period will be your opportunity to decide whether you want to receive all four steps of this program. You are automatically covered by Step 4 unless you choose to exclude yourself. When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial. If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing and returning the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided within 30 days of your hire date. In this case, Steps 1-3 will continue to apply to you – you will no longer, however, be eligible for the benefits available under the Step 4: Arbitration process.

Choosing to be covered by Step 4 is your decision. We urge you to read the Plan Document and educate yourself about the benefits and limitations of arbitration to make an informed decision that's best for you. There are many sources of information and opinions about arbitration. One excellent source of information is the AAA website, which you can access at www.adr.org.

At Macy's, we have a special community – and anytime you have a problem at work, it matters. You deserve respect, attention and a clear, unbiased process to help resolve your problems – quickly and fairly. That's Solutions InSTORE.

More specific details are in the program's Plan Document, which is included here. You should read it. A copy of the Plan Document can also be obtained through www.employeeconnection.net, a request to your local human resources representative, an email sent to solutions.instore@macys.com or by calling the Office of Solutions InSTORE at 1-866-285-5689.

---

## Step Four:

**KEY POINTS:**

The American Arbitration Association (AAA) is a highly-regarded, non-profit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations and all levels of government. AAA is the largest provider of early dispute resolution services in the United States.

## Arbitration

If you are not satisfied with the results of Step 3, you may proceed to Step 4 — Arbitration, a process outside of and independent from the Company. This is the last step in the Solutions InSTORE program.

Arbitration is a lot like a court proceeding, but it's less formal, less time-consuming and less expensive. Even so, many of the same processes will take place — including presenting evidence and hearing witnesses. What's different is that an arbitrator from the American Arbitration Association (who is like a judge), makes the final decision rather than a jury.

**How Arbitration Works:**

| MAKE A WRITTEN REQUEST FOR ARBITRATION | YOU AND COMPANY AGREE ON AN ARBITRATOR | ARBITRATION SESSION HELD | DECISION IS FINAL FOR EVERYONE |
|---|---|---|---|
| You make a written request for arbitration to the Office of Solutions InSTORE within 30 days of Step 3 decision | You and the Company agree on an arbitrator | Arbitration session is usually held within 90 days of arbitrator selection | The arbitrator's decision is final and binding for everyone |

**MONETARY AWARDS** – The arbitrator can award the same damages available in a court of law – and if the decision is in your favor, **you** receive the benefits, not your lawyer.

**LEGAL COUNSEL** – You may wish to have an attorney present at arbitration. The Solutions InSTORE program will reimburse you for up to $2,500 in a rolling calendar year for attorney costs related to arbitration. You can use this money to consult an attorney to see if you should bring your claim to arbitration or for the actual cost of having one present at the proceeding. If you don't bring an attorney to arbitration, the Company won't either. In this case, Solutions InSTORE will pay up to $500 of the expenses you may incur in preparing and presenting your claim.

**ARBITRATION COSTS** – Arbitration costs are separate from attorney costs. You'll pay a portion of the arbitration costs (filing fee) up to a maximum of $125. And, if the arbitrator rules in your favor, the Company will reimburse you for your portion of the filing fee.

9



**EARLY DISPUTE RESOLUTION
PROGRAM ELECTION FORM**



Solutions In•STORE — Early Resolution / Positive Workplace

Coney - Exhibit B

## RETURN THIS FORM ONLY IF EXCLUDING YOURSELF FROM PARTICIPATION IN THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE

Macy's, Inc. is pleased to provide our employees the unique benefit of Solutions InSTORE. Solutions InSTORE is our 4-Step early dispute resolution program. It's here for any and all disputes you may have concerning your employment. It provides many opportunities to resolve almost any type of workplace dispute – large or small. Solutions InSTORE is about early resolution, so we can preserve our work relationships and you can enjoy the kind of work environment that supports success.

You are covered by all 4 Steps of the program when you take or continue a job with us. That means that if you have any concerns or claims about working here, Solutions InSTORE is the way to get them resolved. Most disputes are resolved early in the program. In the rare case a concern is not resolved after three review opportunities, Step 4 – Arbitration is available. Issues at Step 4 are resolved by a professional from the American Arbitration Association in an arbitration process, rather than by a judge or jury in a court process.

It is important to review the entire Solutions InSTORE program brochure and Plan Document. These materials came with this form. They describe the features of the program, including its benefits and tradeoffs. They also describe what you need to do if you prefer not to be covered by Step 4 – Arbitration. You can also get information about the program from **www.employeeconnection.net/solutionsinstore**, your local human resources representative, or by calling the Office of Solutions InSTORE toll free at 866-285-6689.

During the 30 days following your hire date, you have the option to exclude yourself from being covered by Step 4 – Arbitration and its benefits. The choice you make will stay in effect for the entire duration of your employment and afterwards. This form serves as an election form if you choose not to be covered by Arbitration. Whether to stay covered by or exclude yourself from Step 4 is your own decision. You should read all information, including the program brochure, the Plan document, and this form, carefully.

## things to consider about arbitration

In our view:
- Many companies are adopting dispute resolution programs which include arbitration.
- Court dockets are extremely crowded. The vast majority of lawsuits never get to trial. Arbitration can provide better access to justice for individual employee claims that are not economical for an attorney to take to court.
- Arbitration is faster, cheaper and more satisfying for parties than traditional litigation.

| | Step 4 arbitration | vs | Litigation (national perspective) |
|---|---|---|---|
| LENGTH OF TIME TO A FINAL HEARING (ASSUMING CASE GOES TO FINAL HEARING) | Plan provides for about a 130 day maximum, if the parties promptly select an arbitrator who can take the case on schedule. | vs | Can range from 1-5 years in many jurisdictions. |
| COMPANY COST | On average, approximately $14,000 per arbitration.[1] | vs | Companies may spend tens of thousands of dollars in one single individual employment case. |
| EMPLOYEE COST | Filing fee up to one day's pay capped at $125, which is refunded if employee wins. Employee eligible for $2,500 from the Company to help offset attorney costs, or for $500 otherwise. | vs | A minimum filing fee of $350/Federal District Court), with many state filing fees over $150. No legal financial assistance benefit to help offset attorney fees. |
| CLASS ACTIONS | Not Permitted | vs | Permitted, but they require employees to prove that a class is proper under various legal tests. |

- The American Arbitration Association (AAA) is a not-for-profit agency Macy's chose to oversee the arbitration step of Solutions InSTORE. AAA is the largest provider of arbitration services in the world with more than 75 years of experience and over 2 million disputes administered.
- AAA has been endorsed by the following organizations: American Civil Liberties Union, Federal Mediation and Conciliation Service, and National Academy of Arbitrators. In our opinion, Solutions InSTORE exceeds the AAA's Due Process Protocol.

[1] Limited to AAA administration fees, arbitrator costs, and legal stipend or attorney fees incurred as a result of arbitration in actual cases in the Solutions InSTORE program through 12/31/07.

This booklet is a summary of some of the provisions, benefits, and limitations of the Solutions InSTORE program. You are directed to read the Plan Document for the actual details.

Associates covered under a collective bargaining agreement are not automatically eligible to participate in the Solutions InSTORE program.



Early Resolution

Positive Workplace

# Solutions In·STORE

## PLAN DOCUMENT

EARLY DISPUTE RESOLUTION

RULES AND PROCEDURES

January 1, 2007

*If you need any accommodation to help you read and understand this Solutions InSTORE Plan Document, please call the Office of Solutions InSTORE at 1-866-285-6689.*

*Si le gustaría tener este Documento del Plan en español, favor de llamar el numero 1-866-285-6689.*

Coney - Exhibit B

---

Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE. *In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than 30 days from your hire date.* Si le gustaría tener este formulario en español, favor de llamar el numero 1-866-285-6689.

Please CLEARLY print all requested information.

Full Name _____     Social Security Number _____

Address _____     Home Phone Number (____) _____

City _____ State _____ Zip _____     Employee ID Number _____

Division Name _____     Store/Work Location Name _____

[   ] I Decline Step 4 – Arbitration.
I have read all the information about Solutions InSTORE and I elect NOT to stay covered by Arbitration.

AUTHORIZATION *I have read and understand the program information. I voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program. Please keep a copy of this form.*

I _____ on _____ understand that my election as of this date is binding for the
      (Associate Signature)               (Date)
duration of my employment with Macy's, Inc. and after my employment ends.

**If declining to be covered by Step 4 - Arbitration, return your form to:**
**Solutions InSTORE**
**P.O. Box 8083**
**Mason, OH 45040-9853**

Coney - Exhibit B

Macy's, Inc. and its subsidiaries and divisions (the "Company") care about their people. We know that from time to time Associates can have problems at work. And even routine differences can get bigger when there are no resources to help solve them.

In 2004, the Company set out to find a more effective way to resolve workplace disputes. We wanted a way that would benefit everyone involved. Our open door policy was a good place to start. Over the years, the Company has had a policy to help Associates handle problems by working with supervisors and/or Human Resources. To make this policy even better known and improve its effectiveness, the Company added new features. Together with Open Door they became our early dispute resolution program: Solutions InSTORE.

We are convinced that a full internal review of differences is the quickest and most productive way to resolve these disputes. It also maintains good working relationships and avoids unnecessary confrontations. So, Open Door (Step 1) continues to be the foundation of our program. It must be used before taking the next step.

If you are not satisfied with the result, you can request to have your issue reviewed by the Office of Senior Human Resources Management (Step 2). The Senior Vice President or another Human Resources executive who was not involved in the Open Door process will review your issue. They'll get back to you in writing. Steps 1 and 2 are available for any disputes relating to your employment with the Company.

If you are not satisfied with the result at Step 2, and you believe your situation involves legally protected rights, you can make a Request for Reconsideration (Step 3). Step 3 gives you the option, depending on the nature of your claim, of two methods to continue to seek resolution. One method is Peer Review. A panel of your peers decides the outcome of your dispute. The other method is review by a representative from The Office of Solutions InSTORE. This office is located in Macy's Employee Relations Department in Cincinnati.

In those relatively rare situations that, for whatever reason, your dispute cannot be resolved at Step 3 and you wish to pursue it further, Solutions InSTORE provides for a private, professional way to resolve it outside the company. You can request Arbitration (Step 4). This process involves an Arbitrator. The Arbitrator is a professional, neutral third-party selected by both you and the Company. After a hearing, the Arbitrator renders a final decision. The decision is binding on both the Company and you. Nothing in the Solutions InSTORE program, however, prevents you from filing, at any time, a charge or complaint with a government administrative agency like the EEOC, for example.

Plan Document    1



**Solutions**
In•STORE
Early Resolution → Positive Workplace

**4** ARBITRATION

**3** REQUEST FOR RECONSIDERATION

OFFICE OF SOLUTIONS INSTORE

PEER PANEL

**2** OFFICE OF YOUR SENIOR HUMAN RESOURCES MANAGEMENT

**1** OPEN DOOR

PLAN DOCUMENT

Solution InSTORE

Coney - Exhibit B

## Step 1 – Open Door

The Company's open door policy encourages Associates to try to resolve any problems at work with their immediate supervisors. If the Associate is unsatisfied with the immediate supervisor's response or needs to talk to someone other than the supervisor, the Associate may take the problem to the next higher level of supervision. Open Door also provides that the Associate may contact the Human Resources department for advice or assistance at any time.

## Step 2 – Review by the Office of Senior Human Resources Management

If the Associate is not satisfied with the result of Open Door (Step 1), the Associate may go to Step 2. To do that, the Associate files a written request for review with the Office of Senior Human Resources Management within thirty (30) days of the Step 1 decision. The complaint is referred to an appropriate HR executive, one who was not involved at Step 1, who will conduct an impartial investigation. A written decision is then issued generally within forty-five (45) days of receiving the complaint. Along with the decision are instructions for pursuing Step 3 if the Associate is not satisfied with the results of Step 2.

Steps 1 and 2 are available for any disputes relating to your employment at the Company. Steps 3 and 4 are available only for claims involving legally protected rights. "Legally protected rights" means claims the Associate could raise in a court or before an administrative agency.

All Associates agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company after the Effective Date. Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame. Until and unless an Associate elects to be excluded from arbitration within the prescribed time frame, the Associate is covered by Step 4 – Arbitration.

The following pages explain how Solutions InSTORE works.

## Step 3 – Request for Reconsideration

For claims involving legally protected rights, if the Associate is not satisfied with the results of Step 2, the Associate may go to Step 3. To do that, the Associate contacts the Office of Solutions InSTORE within thirty (30) days of the Step 2 decision to file a written Request for Reconsideration. Step 3 involves two features the Associate may consider:

### 1 – Peer Review

Peer Review is available if the Associate's claim involves:

• A final warning or the final phase of written commitment to change or improve a performance issue, or

• Termination of employment,

and does not involve issues claiming harassment, discrimination, a reduction in force, layoff, or alleged statutory violations. If the Associate chooses Peer Review, a representative from The Office of Solutions InSTORE gives the Associate contact information for a division facilitator. The Associate has ten (10) days to contact the facilitator. The facilitator arranges for a panel proceeding. A volunteer panel is assembled to review the Associate's complaint and render a decision. This panel consists of peers from the Associate's level, one (1) from the next level and one (1) non-voting facilitator to manage the process. Numbers of panelists may vary by division, region or location. Panels always consist of at least three (3) voting members. The panel is assembled to review the Associate's complaint. A response is given within five (5) days of the conclusion of the panel proceedings.

A decision of the Peer Review panel that upholds the Associate's claim is final and binding on the Company. If the panel denies the Associate's claim, the Company will let the Associate know the procedures for continuing on to Step 4.

### 2 – Review by the Office of Solutions InSTORE

This feature is available for all claims involving legally protected rights. If the Associate chooses review by the Office of Solutions InSTORE, the Solutions InSTORE Program Manager will send to the Associate a confirmation that the complaint was received. A representative of the Office of Solutions InSTORE then conducts an investigation and provides the Associate with a decision in writing. The decision is generally provided within forty-five (45) days of receiving the complaint. A decision that upholds the Associate's claim is final and binding on the Company. But a decision denying the Associate's claim in any way may be challenged by requesting arbitration under Step 4. If the claim is denied, the company will let the Associate know the procedures for continuing on to Step 4.

## Step 4 – Arbitration Rules and Procedures

### Article 1 – Individuals Covered

This Plan Document applies, as of the Effective Date provided in Article 4, to the following individuals, provided that they are not covered by a collective bargaining agreement with Macy's:

#### a. Newly Hired Associates

All Associates hired by Macy's with a first day of employment on or after January 1, 2007.

#### b. Covered May Associates

Associates whose employment with Macy's relates to the merger of The MAY Department Stores Company with and into Macy's, Inc. on August 30, 2005 (the "Merger"), as defined in i and ii below:

   i. Former MAY Associates continuously employed by Macy's Retail Holdings, Inc., formerly known as The MAY Department Stores Company, between August 30, 2005 and January 1, 2007

   ii. Any Associate hired with a first day of employment before January 1, 2007 by a Macy's division or subsidiary or operating unit that was an affiliate of MAY before the Merger (e.g., a store, a distribution center, a call center, etc.)

*"Macy's" means any division or subsidiary or operating unit or entity related to Macy's, Inc.*

All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved at Step 3.

However,

Arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame. Issues at Step 4 are decided by a professional from the American Arbitration Association in an arbitration process, rather than in a court process. Arbitration thus replaces any right you might have to go to court and try your claims before a jury. You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration. Whether you choose to remain covered by arbitration or to exclude yourself has no negative effect on your employment.

Coney - Exhibit B

Any Associate who experiences a break in service with the Company of sixty (60) days or less, or who transfers from one subsidiary, division or affiliated Macy's Company to another, remains covered by Arbitration, unless the Associate previously excluded himself during the prescribed time period. If the Associate becomes re-employed with the Company following a break in service greater than sixty (60) days, the Associate is treated as a new hire and is given the opportunity to elect to be excluded from arbitration during the prescribed time period.

## Article 2 – Claims Subject to or Excluded from Arbitration

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration. Arbitration is administered by the American Arbitration Association ("AAA") under these Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures.

Arbitration is held before a neutral, third-party Arbitrator. The Arbitrator is selected in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures. If there are any differences between the Solutions InSTORE Early Dispute Resolution Rules and Procedures and the employment arbitration portion of the AAA's Employment Arbitration Rules and Mediation Procedures, the Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply.

Arbitration shall apply to any and all such disputes, controversies or claims whether asserted by the Associate against the Company and/or against any employee, officer, director or alleged agent of the Company. Arbitration shall also apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.

All unasserted employment-related claims as of January 1, 2007 arising under federal, state or local statutory or common law, shall be subject to arbitration. Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, state discrimination statutes, state statutes, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious

prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Claims by Associates that are required to be processed under a different procedure pursuant to the terms of an employee pension plan or employee benefit plan shall not be subject to arbitration under Step 4. Claims by Associates for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act are also not subject to Arbitration under Step 4. Statutory or common law claims made outside of the state employment insurance system alleging that the Company retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration.

Nothing in these Solutions InSTORE Early Dispute Resolution Rules and Procedures prohibits an Associate from filing at any time, a charge or complaint with a government agency such as the EEOC. However, upon receipt of a right to sue letter or similar administrative determination, the Associate's claim becomes subject to arbitration as defined herein.

## Article 3 – Dismissal/Stay of Court Proceeding

By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above. This means that neither the Associate nor the Company can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program.

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration under Step 4, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration, assuming the earlier steps have been exhausted. The Arbitrator's decision on the arbitrable claims, including any determinations as to disputed factual or legal issues, shall be entitled to full force and effect in any later court lawsuit on any nonarbitrable claims.

## Article 4 – Effective Date

As to any Individuals Covered (as defined in Article 1), the Solutions InSTORE program is effective January 1, 2007.

### Article 5 – Time Limit to Initiate Arbitration

Arbitration must be initiated in accordance with the time limits contained in the applicable law's statute of limitations. The period of time elapsed during which the Associate pursued his or her claims under Steps 1-3 of this Program is added on to the applicable limitations period.

### Article 6 – Commencement of Arbitration

To initiate arbitration, the Associate or Company must give written notice to the other party and/or person who is alleged to be liable in the dispute ("Claimant"). Notice to the Company must be given to the Office of Solutions InSTORE.

Notice to the Associate must be given by mailing to the Associate's last known home address.

The notice shall include a statement of the nature of the claim together with a brief description of the relevant facts, the remedies including any amount of damages being sought, and the address which the Claimant will use for the purpose of the arbitration.

Within thirty (30) days after notice of a dispute is given, the other party shall give its response ("Respondent"). The response shall state all available defenses, a brief description of relevant facts and any related counterclaims then known.

Within thirty (30) days after such counterclaims are given, the Claimant shall give Respondent a brief statement of the claimant's defenses to and relevant facts relating to the counterclaims.

Claims and counterclaims may be amended before selection of the arbitrator and thereafter with the arbitrator's consent. Notices of defenses or replies to amended claims or counterclaims shall be delivered to the other party within the thirty (30) days after the amendment.

### Article 7 – Selection of an Arbitrator

Both the Company and the Associate shall participate equally in the selection of an Arbitrator to decide the arbitration. After receiving and/or filing an Arbitration Request Form, the Solutions InSTORE Program Manager shall ask the American Arbitration Association to provide the Company and the Associate a panel of seven (7) neutral arbitrators with experience deciding employment disputes.

The Company and the Associate then shall have the opportunity to review the background of the arbitrators by examining the materials provided by the American Arbitration Association. Within seven (7) calendar days after the panel composition is received, the Associate and the Company shall take turns striking unacceptable arbitrators from the panel until only one remains. The Associate and the Company will inform the American Arbitration Association of the remaining arbitrator who will decide the dispute. However, if both parties agree that the remaining arbitrator is unacceptable, a second panel will be requested from the American Arbitration Association and the selection process will begin again. If both parties agree no one on the second panel is acceptable, either party may request the American Arbitration Association to simply appoint an Arbitrator who was not on either panel.

### Article 8 – Time and Place of Arbitration

The arbitration hearing shall be held at a location within fifty (50) miles of the Associate's last place of employment with the Company, unless the parties agree otherwise. The Parties and the Arbitrator shall make every effort to see that the arbitration is completed, and a decision rendered, as soon as possible. There shall be no extensions of time or delays of an arbitration hearing except in cases where both Parties consent to the extension or delay, or where the Arbitrator finds such a delay or extension necessary to resolve a discovery dispute or other matter relevant to the arbitration.

### Article 9 – Right to Representation

Both the Associate and the Company shall have the right to be represented by an attorney. If the Associate elects not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings.

### Article 10 – Discovery

#### a. Initial Disclosure

Within fourteen (14) calendar days following the appointment of an Arbitrator, the Parties shall provide each other with copies of all documents upon which they rely in support of their claims or defenses. However, the parties need not provide privileged documents that are protected from disclosure because they involve attorney-client, doctor-patient or other legally privileged or protected communications or materials. Throughout the discovery phase, each party shall provide the other party with any and all such documents relevant to any claim or defense.

Coney - Exhibit B

Upon written request, the Associate shall be entitled to a copy of all documents (except privileged documents as described above) in the Associate's "PERSONNEL FILE."

### b. Other Discovery

#### i. Interrogatories/Document Requests

Each party may propound one (1) set of twenty (20) interrogatories (including subparts) to the other party. Interrogatories are written questions asked by one party to the other, the recipient must answer under oath. Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to the interrogatories. Answers to interrogatories must be served within twenty-one (21) calendar days of receipt of the interrogatories.

#### ii. Depositions

A deposition is a statement under oath that is given by one party in response to specific questions from the other party. It is usually recorded or transcribed by a court reporter. Each party shall be entitled to take the deposition of up to three (3) relevant individuals of the party's choosing. The party taking the deposition shall be responsible for all associated costs, such as the cost of a court reporter and the cost of a transcript.

#### iii. Additional Discovery

Upon the request of any party and a showing of appropriate justification, the Arbitrator may permit additional relevant discovery. If the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay the conclusion of the arbitration.

### c. Discovery Disputes

The Arbitrator shall decide all disputes related to discovery. Such decisions shall be final and binding on the parties. In ruling on discovery disputes, the arbitrator need not follow but may consult the discovery rules contained in the Federal Rules of Civil Procedure.

### d. Time for Completion of Discovery

All discovery must be completed within ninety (90) calendar days after the selection of the Arbitrator, except for good cause shown as determined by the Arbitrator. In order to expedite the arbitration, the parties may initiate discovery prior to the appointment of the Arbitrator.

## Article 11 – Hearing Procedure

### a. Witnesses

Witnesses shall testify under oath, and the Arbitrator shall afford each party a sufficient opportunity to examine its own witnesses and cross-examine witnesses of the other party. Either party may issue subpoenas compelling the attendance of any other person necessary for the issuing party to prove its case.

#### i. Subpoenas

A *subpoena* is a command to an individual to appear at a certain place and time and give testimony. A *subpoena* also may require that the individual bring documents when he or she gives testimony. To the extent authorized by law, the Arbitrator shall have the authority to enforce and/or cancel such subpoenas. *Subpoenas* must be issued no less than ten (10) calendar days before the beginning of an arbitration hearing or deposition.

The party issuing the *subpoena* shall be responsible for the fees and expenses associated with the issuance and enforcement of the subpoena, and with the attendance of the subpoenaed witness at the arbitration hearing.

#### ii. Sequestration

The Arbitrator shall ensure that all witnesses who testify at the arbitration are not influenced by the testimony of other witnesses. Accordingly, unless the Arbitrator finds cause to proceed in a different fashion, the Arbitrator shall sequester all witnesses who will testify at the arbitration, however, the Arbitrator shall permit the Associate involved in the arbitration and the Company's designated representative to remain throughout the arbitration, even though they may or may not testify at the hearing.

### b. Evidence

The parties may offer evidence that is relevant and material to the dispute and shall produce any and all non-privileged evidence that the Arbitrator deems necessary to a determination of the dispute. The Arbitrator need not specifically follow the Federal Rules of Evidence, although they may be consulted to resolve questions regarding the admissibility of particular matters.

Coney - Exhibit B

## c. Burden of Proof

Unless the applicable law provides otherwise, the party requesting arbitration or the party filing a counterclaim has the burden of proving a claim or claims by a preponderance of the evidence. To prevail, the party bringing the arbitration must prove that the other's conduct was a violation of applicable law.

## d. Briefing

Each party shall have the opportunity to submit one (1) dispositive motion, one (1) pre-hearing brief, and one (1) post-hearing brief, which is a written statement of facts and law, in support of its position. Submission of such briefs is not required, however, briefs shall be typed and shall be limited in length to twenty (20) double-spaced pages.

## e. Transcription

The parties may arrange for transcription of the arbitration by a certified reporter. The party requesting transcription shall pay for the cost of transcription.

## f. Consolidation

### i. Claims

The Arbitrator shall have the power to hear as many claims as a Claimant may have consistent with Article 2 of these Solutions InSTORE Early Dispute Resolution Rules and Procedures.

The Arbitrator may hear additional claims that were not mentioned in the Arbitration Request Form. To add claims, the Claimant must notify the other party at least thirty (30) calendar days prior to a scheduled arbitration. The additional claims must be timely, under the applicable law, as of the date on which they are added. The other party must not be prejudiced in its defense by such addition.

### ii. Parties

The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding. Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action. (A class or collective action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group).

## g. Confidentiality

All aspects of an arbitration pursuant to these Solutions InSTORE Early Dispute Resolution Rules and Procedures, including the hearing and recording of the proceeding, shall be confidential and shall not be open to the public. The only exceptions are : (i) to the extent both parties agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between the parties; or (iii) as may otherwise be appropriate in response to a governmental agency, legal process, or as required by law.

All settlement negotiations, mediations, and any results shall be confidential.

## Article 12 – Substantive Choice of Law

The Arbitrator shall apply the substantive law, including the conflicts of law, of the state in which the Associate is or was employed. For claims or defenses arising under or governed by federal law, the Arbitrator shall follow the substantive law as set forth by the United States Supreme Court. If there is no controlling United States Supreme Court authority, the Arbitrator shall follow the substantive law that would be applied by the United States Court of Appeals and the United States District Court for the District in which the Associate is or was employed.

## Article 13 – Arbitrator Authority

The Arbitrator shall conduct the arbitration. The arbitrator shall have the authority to render a decision in accordance with these Solutions InSTORE Early Dispute Resolution Rules and Procedures, and in a manner designed to promote rapid and fair resolution of disputes.

The Arbitrator's authority shall be limited to deciding the case submitted by the party bringing the arbitration. Therefore, no decision by any Arbitrator shall serve as precedent in other arbitrations.

The arbitration procedure contained herein does not alter the Associate's employment status. The status remains alterable at the discretion of the Company and/or terminable at any time, at the will of either the Associate or the Company, with or without cause or prior notice. Accordingly, the Arbitrator shall have no authority to alter the Associate's employment status by, for example, requiring that the Company have 'cause' to discipline or discharge an Associate. Nor may the arbitrator otherwise change the terms and conditions of employment of an Associate unless required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate.

Coney - Exhibit B

The Arbitrator shall have the power to award sanctions against a party for such party's failure to comply with these Solutions InSTORE Early Dispute Resolution Rules and Procedures or with an order of the Arbitrator. These sanctions may include assessment of costs or prohibitions of evidence. If justified by a party's wanton or willful disregard of these Solutions InSTORE Early Dispute Resolution Rules and Procedures, the Arbitrator may award the sanction of an adverse ruling in the arbitration against the party who has failed to comply.

## Article 14 – Award

Within thirty (30) calendar days after the later of the close of the hearing or the receipt of post-hearing briefs, if any, the Arbitrator shall mail to the parties a written decision. The decision shall specify appropriate remedies, if any, if a violation of law is found. If the Associate's claim arises under federal or state statutory law, the award should include findings of fact and conclusions of law; otherwise, the inclusion of such findings and conclusion is at the Arbitrator's discretion. The parties to an arbitration shall be provided with a copy of the Arbitrator's award.

## Article 15 – Fees and Expenses

### a. Costs Other Than Attorney Fees

#### i. Definitions

Costs of an arbitration include the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees charged by the AAA, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held. Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

#### ii. Filing Fee/Costs of Arbitration

An Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less. Upon filing the request for arbitration, the Associate shall remit such fee. The Company shall pay the remainder of the costs of the arbitration. The Company shall pay the entire filing fee should it initiate arbitration. Except as provided below, each party shall pay its own incidental costs, including attorney's fees.

The AAA has developed guidelines for waiving administrative fees. This Plan is subject to those guidelines.

## b. Reimbursement for Legal Fees or Costs

The program does not infringe on either party's right to consult with an attorney at any time. In fact, the Company will reimburse an Associate for this legal consultation and/or representation during Step 4 of the program, at a maximum benefit of Two Thousand Five Hundred Dollars ($2,500) per Associate in a rolling twelve (12) month period. If the Associate is not represented by counsel, the Company will reimburse an Associate for incidental costs up to a maximum of Five Hundred Dollars ($500) per Associate in a rolling twelve (12) month period. The Associate will not be entitled to such reimbursement by the Company if the Arbitrator determines the arbitration claim by the Associate was frivolously filed. Any reimbursement to the Associate will occur following the conclusion of the proceedings upon submission of the Associate's bills for costs of legal services or incidental costs.

## c. Shifting of Costs

If the Associate prevails in arbitration, whether or not monetary damages or remedies are awarded, the filing fee shall be refunded to the Associate. The Arbitrator may (based on the facts and circumstances) also require that the Company pay the Associate's share of the costs of arbitration and incidental costs.

## Article 16 – Remedies and Damages

Upon a finding that a party has sustained its burden of persuasion in establishing a violation of applicable law, the Arbitrator shall have the same power and authority as would a judge to grant any relief, including costs and attorney's fees, that a court could grant, in conformance with applicable decisional law and statutory law in the relevant jurisdiction.

## Article 17 – Settlement

The parties may settle their dispute at any time without involvement of the Arbitrator.

Coney - Exhibit B

## Article 18 – Enforceability

The arbitration agreement, the arbitration proceedings, and any award rendered pursuant to them shall be interpreted under, enforceable in accordance with, and subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq, regardless of the state in which the arbitration is held or the substantive law applied in the arbitration. If for any reason the Federal Arbitration Act is inapplicable to enforce this agreement, the Parties agree it will be enforced under the governing state arbitration statute(s).

## Article 19 – Appeal Rights

The decision rendered by the Arbitrator shall be final and binding as to both the Associate and the Company. Either party may appeal the Arbitrator's decision to a court in accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

## Article 20 – Severability/Conflict with Law

In the event that any of these Solutions InSTORE Early Dispute Resolution Rules and Procedures are held to be unlawful or unenforceable, the conflicting rule or procedure shall be modified automatically to comply with applicable law.

In the event of an automatic modification with respect to a particular rule or procedure, the remainder of these rules and procedures shall not be affected. An automatic modification of one of these rules or procedures shall apply only in regard to the particular jurisdiction and dispute in which the rule or procedure was determined to be in conflict with applicable law. In all other jurisdictions and disputes, these Solutions InSTORE Early Dispute Resolution Rules and Procedures shall apply in full force and effect.

## Article 21 – Cancellation or Modification of Dispute Resolution Rules and Procedures or Program

The Company may alter these Solutions InSTORE Early Dispute Resolution Rules and Procedures or cancel the program in its entirety upon giving thirty (30) days written notice to Associates. If such notice is not provided to an Associate, the Solutions InSTORE Early Dispute Resolution Rules and Procedures that covered the Associate prior to the modification or cancellation shall govern.

## Article 22 – Change in Control of Macy's

A change in control of the Company shall nullify and cancel the Associate's agreement to be covered by Step 4 – Arbitration, respecting any claims the Associate may have arising after such change. A change in control will be deemed to have occurred if:

i. Macy's is merged, consolidated, or reorganized into or with another corporation or other legal entity unaffiliated with Macy's, resulting in less than a majority of the combined voting power of the then-outstanding securities of the surviving or resulting corporation or entity immediately after such transaction being held in the aggregate by those who were entitled to vote in the election of directors of Macy's (the "Voting Stock") immediately prior to such transaction; or

ii. Macy's sells or otherwise transfers substantially all of its assets to another corporation or other legal entity and, as a result of such sale or transfer, less than a majority of the combined voting power of the then-outstanding securities of such other corporation or entity immediately after such sale or transfer is held in the aggregate by the holders of Voting Stock of Macy's immediately prior to such sale or transfer.

## Article 23 – Sale of Subsidiary or Division or Operating Unit

Should Macy's sell a subsidiary or division or operating unit of a subsidiary (through the sale of stock or substantially all of its assets) and such transaction includes transferring Associates to a third-party, a transferring Associate's agreement to arbitration under this program shall remain in effect as to any Employment-Related Claims arising prior to such sale but only as to claims against Macy's or its subsidiaries or divisions and shall be null and void as to any such third-party.



### EARLY DISPUTE RESOLUTION
### PROGRAM ELECTION FORM



**RETURN THIS FORM ONLY IF EXCLUDING YOURSELF FROM PARTICIPATION
IN THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE**

Macy's, Inc. is pleased to provide our employees the unique benefit of Solutions InSTORE. Solutions InSTORE is our 4-Step early dispute resolution program. It's here for any and all disputes you may have concerning your employment. It provides many opportunities to resolve almost any type of workplace dispute – large or small. Solutions InSTORE is about early resolution, so we can preserve our work relationships and you can enjoy the kind of work environment that supports success.

You are covered by all 4 Steps of the program when you take or continue a job with us. That means that if you have any concerns or claims about working here, Solutions InSTORE is the way to get them resolved. Most disputes are resolved early in the program. In the rare case a concern is not resolved after three review opportunities, Step 4 – Arbitration is available. Issues at Step 4 are resolved by a professional from the American Arbitration Association in an arbitration process, rather than by a judge or jury in a court process.

It is important to review the entire Solutions InSTORE program brochure and Plan Document. These materials came with this form. They describe the features of the program, including its benefits and tradeoffs. They also describe what you need to do if you prefer not to be covered by Step 4 – Arbitration. You can also get information about the program from **www.employeeconnection.net/solutionsinstore**, your local human resources representative, or by calling the Office of Solutions InSTORE toll free at 866-285-6689.

During the 30 days following your hire date, you have the option to exclude yourself from being covered by Step 4 – Arbitration and its benefits. The choice you make will stay in effect for the entire duration of your employment and afterwards. This form serves as an election form if you choose not to be covered by Arbitration. Whether to stay covered by or exclude yourself from Step 4 is your own decision. You should read all information, including the program brochure, the Plan document, and this form, carefully.

Coney - Exhibit C

Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE. *In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than 30 days from your hire date.* Si le gustaria tener este formulario en español, favor de llamar el numero 1-866-285-6689.

Please CLEARLY print all requested information.

Full Name _____     Social Security Number _____

Address _____     Home Phone Number (____) _____

City _____ State _____ Zip _____     Employee ID Number _____

Division Name _____     Store/Work Location Name _____

[  ] I Decline Step 4 – Arbitration.
    I have read all the information about Solutions InSTORE and I elect NOT to stay covered by Arbitration.

AUTHORIZATION *I have read and understand the program information. I voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE program. Please keep a copy of this form.*

I _____ on _____ understand that my election as of this date is binding for the
    (Associate Signature)                 (Date)
duration of my employment with Macy's, Inc. and after my employment ends.

**If declining to be covered by Step 4 - Arbitration, return your form to:**
**Solutions InSTORE**
**P.O. Box 8083**
**Mason, OH 45040-9853**

Coney - Exhibit C



Welcome to Macy's, Inc. This form acknowledges that you have been given information about a unique employee benefit: The Solutions InSTORE early dispute resolution program.

### Solutions InSTORE New Hire Acknowledgement

I have received a copy of the Solutions InSTORE brochure and Plan Document and acknowledge that I have been instructed to review this material carefully. I understand that I have 30 days from my date of hire to review this information and postmark my form to the Office of Solutions InSTORE if I wish to exclude myself from coverage under Step 4 of the program, Arbitration. I know I can get more information about Solutions InSTORE, or another copy of the Plan Document, from:

  • www.employeeconnnection.net, Benefits tab, Solutions InSTORE;

  • my Human Resources Representative;

  • the Office of Solutions InSTORE, Macy's, Inc., 7 West 7th Street, Cincinnati, OH 45202, Solutions.instore@macys.com, phone (866) 285-6689, fax (513) 562-6720.

I understand that I am covered by and have agreed to use all 4 steps of Solutions InSTORE automatically by my taking or continuing a job in any part of Macy's, Inc.

This means that if at any time I have a dispute or claim relating to my employment, it will be resolved using the Solutions InSTORE process described in the brochure and Plan Document. The process continues to apply to such employment-related disputes even after my employment ends. The Solutions InSTORE process includes Step 4, Arbitration, where disputes are resolved by a professional not affiliated with Macy's, Inc. in an arbitration proceeding, instead of by a judge or jury in a court proceeding. I can read all about Solutions InSTORE, including the benefits and tradeoffs of Step 4, in the brochure and Plan Document. Questions or comments about the program can be directed to my Human Resources Representative or the Office of Solutions InSTORE.

I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form

Coney - Exhibit D

within 30 days of hire and mailing it to the Office of Solutions InSTORE. My decision is kept confidential and will not affect my job.

Associates covered under a collective bargaining agreement are not automatically eligible to participate in the Solutions InSTORE program. For employees who move in and out of a collective bargaining unit during a period of continuous employment, their original election made under the program will continue to apply during periods of eligibility.

I also understand that if I have previously been employed by any part or division of Macy's, Inc. within the last sixty (60) days, my prior decision about being covered by Step 4 – Arbitration, will continue to apply.

Please note, as of June 1, 2007, "Federated Department Stores, Inc." changed its name to "Macy's, Inc."  As a result, all references to "Federated Department Stores", "Federated", or "FDS" in all Solutions InSTORE materials, including but not limited to the Program Brochure, Plan Document, and Election Form, should be replaced with "Macy's, Inc."

Coney - Exhibit D



Coney - Exhibit D

**FAST • CONFIDENTIAL • FAIR**

# OPEN DOOR

## with Solutions InSTORE

At Macy's, Inc., we believe in building strong work relationships. That's why we have our Early Dispute Resolution (EDR) program called Solutions InSTORE. Our goal is to resolve problems at the earliest possible level, **Step 1: Open Door** and to improve the way we resolve workplace disputes.

If you need help resolving a workplace concern, please take a card and contact someone with Solutions InSTORE!



**4** ARBITRATION

OFFICE OF SOLUTIONS INSTORE / PEER PANEL

**3** REQUEST FOR RECONSIDERATION

**2** OFFICE OF A SENIOR HUMAN RESOURCES EXECUTIVE

**1** OPEN DOOR



**Solutions** In•STORE — Early Resolution / Positive Workplace

**E-mail** solutions.instore@macys.com
www.employeeconnection.net/solutionsinstore
**Hotline** 866-285-6689

Resolution at the EARLIEST Level

*To learn more about Solutions InSTORE, talk with your supervisor, a human resources representative or any other member of your management team. If you would like to know how to file a claim at STEP 3 or 4, or have a question about an existing claim, you can call the Office of Solutions InSTORE at 1-866-285-6689.*

*www.employeeconnection.net/solutionsinstore* 6/09






Coney - Exhibit E

**SOLUTIONS IN-STORE – MACY'S NEW HIRE 2007**                    1

[music, title:  Solutions In-Store]

[title:  Early Resolution – Positive Workplace]

Terry Lundgren:  We know that our business depends on our people.  We know
that hiring and retaining men and women with positive attitudes, cooperative
spirits and strong values is key to our success.  That's why we work very hard
to maintain a friendly and productive workplace, one that promotes respect,
fairness and strong work relationships; the kind of environment we know
successful associates want and need.  And our efforts have been well worth it.
We have a great place to work with smart, interesting people.  But, this is real
life – no matter how much effort we make, we're not perfect.  We don't agree all
the time, and sometimes, we have problems that require help.  For this reason,
we've developed a program called Solutions In-Store.  It's a four-step process
designed to help resolve work-related conflicts quickly and fairly.  It builds on
our current open-door policy by giving us more ways to settle differences – even
the most serious matters, such as termination or discrimination.

[music; title again]

Voiceover [over graphics and video montages]:  Early Resolutions – Positive
Workplace, that's what Solutions In-Store is all about.  This special program

Coney - Exhibit F

**SOLUTIONS IN-STORE – MACY'S NEW HIRE 2007**                                    **2**

offers us a number of quick and effective ways to resolve problems at work.

Let's take a quick look at two of the most informal ways to resolve issues.  We

begin with the Open Door – and it means just that, and more.  When you have

a problem, big or small, the door to your supervisor or other member of your

local management team is always open.  We encourage everyone to use the

Open Door.  You simply talk through the matter with your supervisor, or if you

prefer, another local manager.  Most disputes are and will continue to be

successfully resolved through the Open Door, because the people involved are

the closest to the situation and often know how best to solve the problem.

Voiceover [graphics illustrate as she speaks]:  But, if you're not satisfied with

the response, you have 30 days to decide whether or not to take your dispute

to the next level, Office of Your Senior Human Resources Management.

Though a review is still within your division, it involves the highest level of

Human Resources.  You begin by explaining your situation to your Senior Vice

President of HR.  You tell us what your dispute is about and what you think

the solution should be.  An executive from this office investigates the matter

and gives you a response, first verbally, and then confirmed in writing.  Again,

most problems, whether big or small, are successfully resolved in the early

parts of the process.  But, it's possible that an employee may not be satisfied,

and particularly in serious cases, where an employee has entered into the final

Coney - Exhibit F

**SOLUTIONS IN-STORE – MACY'S NEW HIRE 2007**                              **3**

phase of written commitment to change or improve a performance issue or a

termination that doesn't seem fair, an ongoing problem can disrupt the lives of

everyone involved.  So, the last two levels of the program are reserved for

settling these more serious matters, without the time, energy and expense

required through the courts.  Here's how they work: Step Three is called a

Request for Reconsideration.  It's special because, depending on the nature of

your concern, you get a choice about how your case is reviewed.  In all cases,

you have the option to have your concern reviewed by an executive of the Office

of Solutions In-Store.  In many cases, you may choose instead a peer panel to

hear your concern.  The peer panel is made up of coworkers much like you, in

similar jobs, which make them uniquely qualified to understand your dispute.

People volunteer to sit on panels, and then undergo special training so they

can effectively hear and make a decision about the dispute.  You simply

present your case to the peer panel that acts much like a jury, listening to all

the facts and then taking a vote.  The other choice in Step Three is to have your

case reviewed by an executive in the Office of Solutions In-Store, which is

located in Cincinnati, Ohio.  In this situation, an employee relations

professional from the Macy's Corporate Office will review your case, gather

information, and make a decision in writing.  Regardless which review process

you choose, and whatever the decision – even if it's reinstatement for a

termination – the company will abide by it.  We're very confident of the

Solutions In-Store program, and expect most people who use it will reach a

Coney - Exhibit F

**SOLUTIONS IN-STORE – MACY'S NEW HIRE 2007**                    **4**

successful resolution by this point in the process.  However, if you're not

satisfied, you can take advantage of the final and most formal level of Solutions

In-Store, called arbitration.  This gives you access to a member of the American

Arbitration Association, a non-profit, neutral organization specializing in

helping people resolve disputes quickly and fairly.  Your arbitrator acts much

like a judge; that is, listening to each side, reviewing evidence, and making a

decision that's final and binding for everyone.  And just like a courtroom judge,

the arbitrator can award monetary damages, including punitive damages or

reinstatement.  Decisions are final and binding for both sides.  The costs

involved with arbitration are much less than those associated with a normal

court case, and you're only responsible for a small percentage of these costs.

Plus, if the arbitrator sides with you, the company pays it all.  You may want to

consult an attorney, or even bring one with you to arbitration.  If you do, the

company will pay up to $2,500 per rolling calendar year of your legal fees, no

matter what the outcome of the case.  However, if you decide not to bring an

attorney, neither will the company.  Arbitration is designed to provide the

fairness and awards offered in a courtroom, without the lengthy time and

significant cost.  Throughout the entire Solutions In-Store process, it's

important to know that your privacy and confidentiality are protected.  All

information related to your claim is accessed on a strictly business need-to-

know basis.  All employees enjoy the benefits of the first three steps of

Solutions In-Store.  The fourth step, arbitration, will be provided to you, unless

Coney - Exhibit F

**SOLUTIONS IN-STORE – MACY'S NEW HIRE 2007**                                    **5**

you elect not to receive this benefit by making that choice on the Solutions In-Store election form.  Materials about the Solutions In-Store program, and an election form, will be provided to you for your review.  If you have any questions about the program or this election opportunity, we encourage you to speak with a Human Resources representative, or contact the Office of Solutions In-Store.

[music]

Terry Lundgren:  We have a special community, and any time you have a problem at work, it matters.  You deserve respect, attention and a clear, unbiased process to help resolve your problems quickly and fairly.  That's why we have Solutions In-Store – it's one more way to build a friendly and productive workplace, the kind of place that makes you feel good about yourself and those around you, the kind of place worthy of your valuable time and energy, the kind of place you want to be.

[title]

[end of recording]

Coney - Exhibit F