IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHELBI L. SELLERS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 12-cv-02496-SHL-tmp |
| | ) |
| MACY'S RETAIL HOLDINGS, INC. | ) |
| a/k/a ESTEE LAUDER MACY'S | ) |
| DEPARTMENT STORE, | ) |
| | ) |
|     Defendant. | ) |

REPORT AND RECOMMENDATION

Before the court by order of reference is defendant Macy's Retail Holdings, Inc.'s (erroneously sued as Estee Lauder Macy's Department Store) ("Macy's") Motion to Compel Arbitration and Dismiss Civil Proceedings ("Motion to Compel Arbitration"). (ECF No. 15.) Plaintiff Shelbi L. Sellers, who is proceeding *pro se*, filed a response in opposition. For the reasons below, it is recommended that Macy's motion be granted.

I. PROPOSED FINDINGS OF FACT

The following facts are not in dispute. Sellers, who is African-American, was hired by Macy's on November 18, 2009, to work at a Macy's store in Memphis, Tennessee. (Def.'s Mot. at 5, ECF No. 15; Affidavit of Erin Coney ("Coney Aff.") ¶ 16, ECF No. 15-

1.)[1]  Sellers, who apparently worked as a part-time employee, alleges that in July 2011, she applied for a promotion to become a full-time Beauty Advisor in Macy's Estee Lauder cosmetics department, but was denied that promotion. (Compl. ¶ 10, ECF No. 1; EEOC Charge of Discrimination, ECF No. 1-1.) Sellers claims that Macy's filled those positions with white employees who had no experience. (Id.) On February 10, 2012, Macy's terminated Sellers's employment. (Def.'s Mot. at 5.) Sellers subsequently filed the instant complaint, alleging that Macy's violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by failing to promote her and then terminating her employment based on her race.[2] (Compl. ¶¶ 9-10.)

During the time that Sellers worked for Macy's, Macy's had in

---

[1]Coney is Director of Employee Relations, Solutions InSTORE, for Macy's, Inc. (Coney Aff. ¶ 2.) Macy's, Inc. is the parent company of Macy's Retail Holdings, Inc., which operates department stores in certain areas of the United States (including Tennessee) that are known as "Macy's." (Id.) As Director, Coney is responsible for the management and administration of Macy's Solutions InSTORE Early Dispute Resolution Program, which includes supervising the Solutions InSTORE Program and the employees whose sole job is to administer the program. (Coney Aff. ¶¶ 3, 6.)

[2]Along with her complaint, Sellers also filed an application to proceed *in forma pauperis*, which the court granted. In that application, Seller stated that as of June 2012, she and her spouse were unemployed and had no income, they received foods stamps, they had no assets, and "I am bankrupt and both my spouse and myself are unemployed and just about homeless." (ECF No. 2.) She also claimed that during her employment with Macy's, her gross monthly pay was $600.00. (Id. at 2.) As of June 2012, Sellers was thirty-six years old, and claimed to have attended "some college." (Id. at 5.)

place a dispute resolution program called the Solutions InSTORE Early Dispute Resolution Program ("SIS Program"). (Coney Aff. ¶ 4.) The SIS Program applies to all subsidiaries and divisions of Macy's, including Macy's Retail Holdings, Inc. (Id.) The SIS Program first went into effect in 2003 and applies to all non-unionized employees of Macy's, including those employed at Macy's stores in Tennessee. (Coney Aff. ¶ 7.) The SIS Program was subsequently revised and the current version of the program was implemented effective January 1, 2007. (Id.) As set forth in the SIS Program Plan Document ("Plan Document"), the program contains four separate steps for resolution of work-related problems. (Coney Aff. ¶ 8.) In summary, these steps are as follows:

Step 1:   The [SIS Program] begins with "Open Door." Employees are encouraged to bring their concerns to a supervisor or local management team member (e.g., Store or Facility Manager, Human Resources Representative) for discussion and resolution.

Step 2:   In Step 2, the employee submits a written request for review to the Office of the Senior Human Resources executive of the Macy's or Macy's region/division where he or she works. A human resources executive not involved in the underlying decision conducts an investigation.

Step 3:   If the employee is not satisfied with the Step 2 decision, and the claim involves legally protected rights, the employee may proceed to Step 3, and the request is directed to the Office of Solutions InSTORE in Cincinnati, Ohio. If the dispute involves a claim(s) related to layoffs, harassment, discrimination, reduction in force, or other alleged statutory violations, a trained

-3-

professional investigates it thoroughly and objectively. Other disputes, including disputes over termination and final warnings, may be submitted to a Peer Review Panel at the employee's option. In either case, the dispute is decided by the Peer Review Panel or the Office of Solutions InSTORE and not by local/divisional management.

Step 4:  The fourth and final step of the [SIS Program] is binding arbitration. Arbitration under the [SIS Program] is a voluntary term and condition of employment in that all employees are given the opportunity to opt out of arbitration by completing a one-page form and mailing it to the Office of Solutions InSTORE in Ohio within a prescribed time period. If the employee does not submit the opt-out form within the prescribed time period, the employee agrees to arbitration as a term and condition of continued employment. Employees may agree to employment with or without Step 4-Arbitration. Also, while employees are encouraged to go through Steps 1 through 3 before proceeding to Step 4-Arbitration, there is no administrative or other requirement that they do so.

(Coney Aff. ¶ 9.)

Should the employment dispute reach Step 4, Article 2 of Step 4 provides that "all employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state, or local decisional or statutory law ('Employment-Related Claims') shall be settled exclusively by final and binding arbitration" administered by the American Arbitration Association ("AAA"). (SIS Program Plan Document, ECF No. 15-1 at 20.) Article 2 defines "Employment-Related Claims" as including claims arising under Title

-4-

VII, among other anti-discrimination laws. (Id.) The Plan Document provides, "[a]ll Associates agree to be covered by Step 4 - Arbitration by accepting or continuing employment with the Company . . . [u]ntil and unless an Associate elects to be excluded from arbitration within the prescribed time frame[.]" (Plan Document, ECF No. 15-1 at 16.)

With regard to fees and expenses, Article 15 of the Plan Document provides:

a.   Costs Other Than Attorney Fees

i.   Definitions

Costs of an arbitration include the daily or hourly fees and expenses (including travel) of the Arbitrator who decides the case, filing or administrative fees charged by the AAA, the cost of a reporter who transcribes the proceeding, and expenses of renting a room in which the arbitration is held.  Incidental costs include such items as photocopying or the costs of producing witnesses or proof.

ii. Filing Fee/Costs of Arbitration

An Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less.  Upon filing the request for arbitration, the Associate shall remit such fee.  The Company shall pay the remainder of the costs of the arbitration. The Company shall pay the entire filing fee should it initiate arbitration.  Except as provided below, each party shall pay its own incidental costs, including attorney's fees.

The AAA has developed guidelines for waiving administrative fees.  This Plan is subject to those guidelines.

b.   Reimbursement for Legal Fees or Costs

The program does not infringe on either party's right to
consult with an attorney at any time. In fact, the
Company will reimburse an Associate for this legal
consultation and/or representation during Step 4 of the
program, at a maximum benefit of Two Thousand and Five
Hundred Dollars ($2,500) per Associate in a rolling
twelve (12) month period. If the Associate is not
represented by counsel, the Company will reimburse an
Associate for incidental costs up to a maximum of Five
Hundred Dollars ($500) per Associate in a rolling twelve
(12) month period. . . .

c.  Shifting of Costs

If the Associate prevails in arbitration, whether or not
monetary damages or remedies are awarded, the filing fee
shall be refunded to the Associate. The Arbitrator may
(based on the facts and circumstances) also require that
the Company pay the Associate's share of the costs of
arbitration and incidental costs.

(Plan Document at 28-29.) Other pertinent terms of Step 4 include

the following: (1) Macy's will have an attorney present at the

arbitration only if the employee decides to have an attorney

present; (2) discovery is permitted and includes automatic

disclosures by both parties of documents that support their claims

or defenses, three depositions per side, twenty interrogatories

(each of which may include a corresponding document request), and

authority for the arbitrator to permit additional discovery if the

circumstances warrant; (3) the arbitrator is selected jointly by

the parties and has the authority to grant any ultimate relief

under applicable law, including attorney's fees and costs; and (4)

the arbitration is administered under the AAA's Employment

Arbitration Rules and Mediation Procedures, with any differences

being noted in the Plan Document.[3]  (Coney Aff. ¶ 15.)

The Plan Document also contains a severability clause.
Article 20 provides:

> In the event that any of these Solutions InSTORE Early
> Dispute Resolution Rules and Procedures are held to be
> unlawful or unenforceable, the conflicting rule or
> procedure shall be modified automatically to comply with
> applicable law.
>
> In the event of an automatic modification with respect to
> a particular rule or procedure, the remainder of these
> rules and procedures shall not be affected.  An automatic
> modification of one of these rules or procedures shall
> apply only in regard to the particular jurisdiction and
> dispute in which the rule or procedure was determined to
> be in conflict with applicable law.  In all other
> jurisdictions and disputes, these [SIS Program] Rules and
> Procedures shall apply in full force and effect.

(Plan Document at 30.)

An employee hired after the implementation of the SIS Program
is given thirty days from his or her date of hire to opt out of
Step 4 arbitration.  (Coney Aff. ¶ 10.)  At orientation, the
employee is given a SIS Program brochure, which contains a summary
of the plan, an opt-out Election Form, and a copy of the Plan
Document.  (Coney Aff. ¶ 19.)  The brochure states, among other
things, that the arbitration process is binding, covers most
disputes related to the employee's employment, and is a waiver of
the employee's right to a civil action and jury trial.  (<u>Id.</u>)  The

---

[3]Article 3 of the SIS Program provides that "[i]f a party files a
lawsuit in court to resolve claims subject to arbitration, both
agree that the court shall dismiss the lawsuit and require the
claim to be resolved through the Solutions InSTORE program."

-7-

brochure notifies the employee that he or she is automatically covered by Step 4 final and binding arbitration unless the employee elects to opt out of that arbitration requirement by mailing the opt-out Election Form to the Office of Solutions InSTORE within thirty days of the hire date. (Coney Aff. ¶¶ 19-20.) The opt-out Election Form is stapled to the middle of the SIS Program brochure. (Coney Aff. ¶ 20.) Upon receipt of the SIS Program brochure, the newly hired employee is required to physically or electronically sign a "Solutions InSTORE New Hire Acknowledgment" ("New Hire Acknowledgment form"). (Coney Aff. ¶ 21.) The New Hire Acknowledgment form states that the employee acknowledges that he or she has received the brochure and Plan Document, understands that should the employee decide to opt out of Step 4 arbitration, he or she has thirty days from the date of hire to mail in the opt-out Election Form, and understands "I am covered by and have agreed to use all 4 steps of [the SIS Program] automatically by my taking or continuing a job in any part of Macy's, Inc." (Coney Aff. ¶ 21; New Hire Acknowledgment form, ECF No. 15-1 at 53-54.) To electronically sign the New Hire Acknowledgment form, the employee accesses the form online (along with other employment-related forms, such as I-9 and W-4 forms), at which time the employee is prompted to enter his or her social security number, date of birth, and zip code. (Coney Aff. ¶ 21; Affidavit of Ragunathan

Veeraraghavan ("Veeraraghavan Aff.") ¶¶ 4-5, ECF No. 15-2.)[4]   The
New Hire Acknowledgment form notifies the employee that the
decision to accept or opt out of Step 4 arbitration "is kept
confidential and will not affect my job."[5]  (Coney Aff. ¶ 12; New
Hire Acknowledgment form.)  In addition, the Plan Document informs
the employee that "[w]hether you choose to remain covered by
arbitration or to exclude yourself has no negative effect on your
employment."  (Plan Document at 19.)

The Office of Solutions InSTORE provides each region/division
with new hire informational videos, and each store is directed to
show the video to all employees during the new hire orientation.
(Coney Aff. ¶ 24; Ex. F, video transcript, ECF No. 15-1 at 57-61.)
The video informs the newly hired employees about the SIS Program,
including Step 4 arbitration, and notifies the employees that
"[t]he fourth step, arbitration, will be provided to you, unless

---

[4]Veeraraghavan is Director of Insite, Analytics and Operations for
Macy's Systems and Technology and, among other duties, oversees the
management of the online forms that all new employees are and were
required to complete and/or acknowledge prior to beginning work at
Macy's.  (Veeraraghavan Aff. ¶¶ 1-3.)

[5]According to Macy's, it intentionally designed the opt-out
procedure so that local management would be unaware of an
employee's decision.  (Coney Aff. ¶ 13.)  All employees are asked
to mail their opt-out Election Forms to the Office of Solutions
InSTORE in Mason, Ohio so that no one at the Macy's stores or other
work locations has access to individual election information.
(Id.)   Only a select few company employees have access to the
returned opt-out Election Forms and the portion of the electronic
database containing an employee's opt-out status.   (Id.)   An
employee's opt-out status is accessed only when that information
becomes relevant to handling an employee's claim.  (Id.)

you elect not to receive this benefit by making that choice on the Solutions InSTORE election form."[6]  (Ex. F., ECF No. 15-1 at 60-61.)

In the present case, Macy's, through affidavits and supporting documents, has provided uncontroverted evidence that Sellers electronically signed the New Hire Acknowledgment form on November 18, 2009, the date of her hire.  (Coney Aff. ¶ 21, Ex. D.; Electronic Signature form, ECF No. 15-1 at 55; Veeraraghavan Aff. ¶ 13.)  Macy's has also presented uncontroverted evidence that Sellers did not return the opt-out Election Form to the Office of Solutions InSTORE.[7]  (Coney Aff. ¶¶ 25-29.)

## II.  PROPOSED CONCLUSIONS OF LAW

The primary purpose of the Federal Arbitration Act ("FAA") is to "'ensur[e] that private arbitration agreements are enforced according to their terms.'"  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (quoting Volt Info. Scis., Inc. v. Bd. of

---

[6]Macy's also provides notice to its employees of the SIS Program's four-step process through other means, including on its website and on posters displayed in areas frequented by employees.  (Coney Aff. ¶¶ 22-23.)  However, Macy's has not presented evidence that Sellers ever viewed the website or saw the posters.

[7]The opt-out Election Form and New Hire Acknowledgment notify the employee that they can obtain more information about the SIS Program by going to a website (www.employeeconnection.net), contacting the Human Resources representative, or contacting the Office of Solutions inSTORE through a toll free number, by email, or by mail or fax.  Based on a search of its records, Macy's has confirmed that Sellers has never attempted to contact the Office of Solutions InSTORE by phone, email, or letter.  (Coney Aff. ¶¶ 29-30.)

<u>Trs. of Leland Standford Junior Univ.</u>, 489 U.S. 468, 478 (1989)).

Section 2 of the FAA states in relevant part:

> A written provision in . . . a contract evidencing a
> transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract .
> . . shall be valid, irrevocable, and enforceable, save
> upon such grounds as exist at law or in equity for the
> revocation of any contract.

9 U.S.C. § 2. The Supreme Court has described this provision "as
reflecting both a liberal federal policy favoring arbitration" and
the "fundamental principle that arbitration is a matter of
contract." <u>Concepcion</u>, 131 S. Ct. at 1745 (internal quotation
marks and citations omitted). "The FAA places arbitration
agreements on an equal footing with other contracts and requires
courts to enforce them according to their terms." <u>Rent-A-Center,
W., Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010) (citing <u>Buckeye Check
Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006) and <u>Volt Info.</u>,
489 U.S. at 478); <u>see also</u> <u>Am. Express Co. v. Italian Colors Rest.</u>,
133 S. Ct. 2304, 2309 (2013) (stating that "courts must 'rigorously
enforce' arbitration agreements according to their terms")
(citation omitted).

"Section 4 of the [FAA] sets forth the procedure to be
followed by a district court when presented with a motion to compel
arbitration." <u>Winn v. Tenet Healthcare Corp.</u>, No.
2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *1 (W.D. Tenn. Jan. 27,
2011) (citing 9 U.S.C. § 4; <u>Great Earth Cos., Inc. v. Simons</u>, 288
F.3d 878, 889 (6th Cir. 2002)). In relevant part, that section

provides as follows:

> A party aggrieved by the alleged failure, neglect, or
> refusal of another to arbitrate under a written agreement
> for arbitration may petition any United States district
> court . . . for an order directing that such arbitration
> proceed in the manner provided for in such agreement. .
> . . The court shall hear the parties, and upon being
> satisfied that the making of the agreement for
> arbitration or the failure to comply therewith is not in
> issue, the court shall make an order directing the
> parties to proceed to arbitration in accordance with the
> terms of the agreement. . . . If the making of the
> arbitration agreement or the failure, neglect, or refusal
> to perform the same be in issue, the court shall proceed
> summarily to the trial thereof.

9 U.S.C. § 4[8]; see also Great Earth Cos., 288 F.3d at 889-90; Winn, 2011 WL 294407, at *2.

A district court considering a motion to compel arbitration has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of that agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the

---

[8]Section 4 of the FAA does not require an evidentiary hearing. Thus, the court submits this report and recommendation based on the parties' submissions. See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir. 1983) (stating that § 4 does not require an evidentiary hearing); see also Armstrong v. Assocs. Int'l Holdings Corp., 242 F. App'x 955, 959 (5th Cir. 2007) (concluding that district court was not required to conduct an evidentiary hearing before compelling the parties to proceed to arbitration); Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc., 455 F.3d 7, 14 (1st Cir. 2006) (stating that under § 4 "a 'hearing' on the papers may be all that is required") (citing Cincinnati Gas & Elec. Co., 706 F.2d at 159); Acosta v. Fair Isaac Corp., 669 F. Supp. 2d 716, 719 (N.D. Tex. 2009) (stating that there is "no requirement that an evidentiary hearing be convened on motions to compel arbitration").

court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. <u>Glazer v. Lehman Bros., Inc.</u>, 394 F.3d 444, 451 (6th Cir. 2005); <u>Fazio v. Lehman Bros., Inc.</u>, 340 F.3d 386, 392 (6th Cir. 2003); <u>Stout v. J.D. Byrider</u>, 228 F.3d 709, 714 (6th Cir. 2000). The court must compel the parties to arbitrate if it is satisfied that the agreement to arbitrate is not "in issue." <u>Winn</u>, 2011 WL 294407, at *2 (citing <u>Great Earth Cos.</u>, 288 F.3d at 889). But "[i]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." <u>Mazera v. Varsity Ford Mgmt. Servs., LLC</u>, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting <u>Great Earth Cos.</u>, 288 F.3d at 889). If "a reasonable finder of fact could conclude that no valid agreement to arbitrate exists," the issue is subject to resolution by a jury. <u>Id.</u> (quoting <u>Great Earth Cos.</u>, 288 F.3d at 889). "The required showing mirrors that required to withstand summary judgment in a civil suit." <u>Winn</u>, 2011 WL 294407, at *2 (quoting <u>Great Earth Cos.</u>, 288 F.3d at 889) (citations omitted)); <u>see also</u> <u>L & R Farm P'ship v. Cargill Inc.</u>, 963 F. Supp. 2d 798, 803 (W.D. Tenn. 2013) (same); <u>Kovac v. Superior Dairy, Inc.</u>, 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013) ("In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment.");

Arnold v. Rent-a-Center, Inc., No. 11-18-JBC, 2011 WL 1810145, at
*2 (E.D. Ky. May 12, 2011) ("Most circuits have used the summary
judgment standard when considering motions to dismiss or stay based
on the existence of a valid arbitration agreement."); Smith v.
Servicemaster, No. 3:09-0250, 2009 WL 1457143, at *4 (M.D. Tenn.
May 22, 2009) (explaining that in deciding a motion to compel
arbitration, the court "merely determines whether the plaintiff has
raised a 'genuine issue of material fact as to the validity of the
agreement to arbitrate,' using an analysis standard that mirrors
the summary judgment analysis standard; that is, the court will
view all facts and inferences drawn therefrom in the light most
favorable to the non-moving party and will determine whether the
evidence presented is such that a reasonable finder of fact could
conclude that no valid agreement to arbitrate exists.").

It is undisputed that the scope of the arbitration agreement
includes Sellers's Title VII race discrimination claim, as the Plan
Document broadly covers "all employment-related legal disputes,
controversies, or claims arising out of, or relating to, employment
or cessation of employment, whether arising under federal, state,
or local decisional or statutory law," and specifically lists Title
VII as one of the "Employment-Related Claims" subject to binding
arbitration. Also, it is well settled within the Sixth Circuit
that Congress did not intend to exclude Title VII claims from
arbitration. See Willis v. Dean Witter Reynolds, Inc., 948 F.2d

305, 309-10 (6th Cir. 1991); see also Cooper v. MRM Inv. Co., 367 F.3d 493, 499 (6th Cir. 2004). Thus, the only disputes that the court must resolve are whether the parties agreed to arbitrate and whether any defenses preclude the enforceability of the agreement.

As arbitration agreements are matters of contract, this court applies state law when considering the enforceability of the arbitration agreement. Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir. 2007); see also Tillman v. Macy's, Inc., 735 F.3d 453, 456 (6th Cir. 2013) (citing Seawright). "Even when applying state contract law, a court must consider the strong federal policy favoring arbitration, [and] [a]ny doubts about whether an agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration." Winn, 2011 WL 294407, at *4 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). In Tennessee, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced."[9] Winn, 2011 WL 294407, at *4 (quoting Thompson v.

_____

[9]This court applies Tennessee law, as the agreement was executed in Tennessee, Sellers's employment and the alleged discrimination and unlawful termination occurred there, and neither party has indicated that any other state's law should apply. Cooper, 367 F.3d at 499 (stating that district court correctly applied Tennessee law in deciding whether to compel parties to arbitrate Title VII claims pursuant to employment contract because "the

<u>Hensley</u>, 136 S.W.3d 925, 929-30 (Tenn. Ct. App. 2003)).

The court finds from the evidence presented that there is no genuine dispute that the parties mutually agreed to be bound by Step 4 arbitration. The SIS Program requires both Sellers and Macy's to submit all employment-related claims to Step 4 arbitration. Macy's notified Sellers about the details of Step 4 arbitration in numerous ways, including through the SIS Program brochure, Plan Document, opt-out Election Form, New Hire Acknowledgment form, and new hire informational video. These documents informed Sellers that she had thirty days from her date of hire to opt out of Step 4 arbitration, and that her continued employment (without opting out within the thirty-day period) would constitute an agreement to be bound by all four steps of the SIS Program. These documents also informed her that her election decision would be kept confidential and would not affect her employment. By electronically signing the New Hire Acknowledgment form, Sellers acknowledged that she received the brochure, Plan Document, and opt-out Election Form. Sellers did not opt-out of Step 4 arbitration, and she continued to work for Macy's for over a year. Sellers's continued employment, under Tennessee law, constituted acceptance of Step 4 arbitration. <u>See</u> <u>Seawright</u>, 507 F.3d at 970 (applying Tennessee law and holding that employee's

---

agreement was executed there, Cooper's employment and the alleged harassment and discharge occurred there, and neither party expected any other state's law to apply").

knowing continuation of employment after the effective date of
employer's arbitration program constituted acceptance of a valid
and enforceable contract to arbitrate claims under the Family and
Medical Leave Act and Tennessee anti-discrimination laws); see also
Tillman, 735 F.3d at 460-61 (applying Michigan law and holding that
plaintiff's continued employment following communication by Macy's
about SIS Program constituted acceptance of the arbitration
agreement); Dawson v. Rent-A-Center Inc., 490 F. App'x 727, 730
(6th Cir. 2012) (holding that employer was entitled to compel
employee to arbitrate claims because under Michigan law, continued
employment, after notice, is sufficient to show assent to an
arbitration agreement); Fisher v. GE Med. Sys., 276 F. Supp. 2d
891, 895 (M.D. Tenn. 2003) ("Tennessee law recognizes the validity
of unilateral contracts, in which acceptance is indicated by action
under the contract.").

The court also finds that there is no genuine dispute that the
agreement to arbitrate was supported by sufficient consideration.
Under Tennessee law, "[m]utuality of promises is 'ample'
consideration for a contract. A mutual promise 'in itself would
constitute a sufficient consideration.'" Seawright, 507 F.3d at
974 (applying Tennessee law); see also Pyburn v. Bill Heard
Chevrolet, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001) (quoting
Rodgers v. S. Newspapers, Inc., 379 S.W.2d 797, 800 (Tenn. 1964)).
In Seawright, the Sixth Circuit held that because the arbitration

agreement was binding on both the employer and employee, regardless of who requested arbitration, there was mutuality of obligation and thus adequate consideration under Tennessee law. Seawright, 507 F.3d at 974. The same principle applies to the instant case. Furthermore, there is no genuine dispute that the parties' agreement to arbitrate was free from fraud, is not against public policy, and is sufficiently definite to be enforced.

In her response to the Motion to Compel Arbitration, Sellers raises several arguments against the enforcement of Step 4 arbitration. She states that "any barrier to the Court of the United States of America for the purpose of due process should be held [] void." (Pla.'s Resp. to Mot. at 1.) The court finds that Sellers has failed to carry her burden of showing that she did not voluntarily and knowingly waive her right to litigate her employment dispute in court. See Tillman, 735 F.3d at 459 (stating that "[t]he burden was on Tillman to show that she did not voluntarily and knowingly waive her right to a jury trial"). In determining whether an employee knowingly and voluntarily waived his or her right to prospective civil rights claims, the court considers: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the

circumstances." <u>Seawright</u>, 507 F.3d at 974 (quoting <u>Morrison v.</u> <u>Circuit City Stores, Inc.</u>, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)); <u>see also</u> <u>Tillman</u>, 735 F.3d at 461 (applying <u>Morrison</u> factors). According to Sellers's *in forma pauperis* application, she was thirty-six years old in June 2012, which would mean she was about thirty-three years old when she began working for Macy's in November 2009. She attended "some college," and there is no indication that she was incapable of understanding the SIS Program's arbitration requirement. She had thirty days to consider whether to opt out of Step 4 arbitration, which gave her sufficient time to make an informed decision about whether to opt out and to consult with an attorney. The SIS Program brochure, Plan Document, opt-out Election Form, New Hire Acknowledgment form, and new hire instructional video all clearly informed Sellers that her continued employment would constitute an agreement to be bound by Step 4 arbitration unless she mailed in her opt-out Election Form within the prescribed period. The evidence demonstrates that Sellers voluntarily and knowingly waived her right to pursue her claim through the courts.

Sellers also contends that "she does not recall signing anything electronically or otherwise agreeing to arbitrate the complaint." (Pl.'s Resp. to Mot. at 1.) As an initial matter, Sellers has not submitted any evidence (such as an affidavit) to support this contention, and her unsupported statement by itself

cannot create a genuine issue regarding whether she electronically signed the New Hire Acknowledgment form or agreed to arbitrate. Morever, even if Sellers had supported this statement with an affidavit, the court nevertheless would find that such a conclusory statement does not put Step 4 arbitration "at issue" so as to avoid arbitration. The affidavits of Coney and Veeraraghavan, along with the supporting documents, demonstrate that Sellers received documents notifying her about Step 4 arbitration, her ability to opt out, and the legal consequences of her decision to not opt out and to continue working for Macy's. The affidavits and supporting documents demonstrate that Sellers electronically signed the New Hire Acknowledgment form on November 18, 2009, the date of her hire.[10] As for Sellers's contention that she does not recall "agreeing to arbitrate," this conclusory statement, even if supported by affidavit, would not alter the court's analysis, because "one who signs a contract which he has had an opportunity

---

[10]The court notes that whether or not Sellers actually signed the New Hire Acknowledgment form, or for that matter any other document, is not particularly relevant to the ultimate issue of whether she assented to Step 4 arbitration. As Macy's argues in its motion, she agreed to be bound by Step 4 arbitration when she continued working for Macy's and did not timely mail in the opt-out Election Form. (Def.'s Mot. at 11, 13.) The fact that she signed the New Hire Acknowledgment form is merely further proof that she received the SIS Program brochure, opt-out Election Form, and Plan Document, and therefore was sufficiently notified of the arbitration requirement and her ability to opt out. As the court explained in <u>Seawright</u>, "arbitration agreements under the FAA need only be written, and not necessarily signed. <u>Seawright</u>, 507 F.3d at 974.

to read and understand, is bound by its provisions" and thus plaintiff "cannot be excused from complying with the arbitration provision if [she] simply failed properly to read the contract." See Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1016 (6th Cir. 2003) (internal citations and quotation marks omitted).

Finally, Sellers argues that the arbitration provision is unenforceable because it is unconscionable.[11] Tennessee recognizes two types of unconscionability:

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001) (quoting Haun v. King, 690 S.W.2d 869, 872

---

[11]In analyzing Sellers' claim that the arbitration provision of the employment contract is unconscionable, the court applies Tennessee law. In Tennessee, "a contract is presumed to be made with reference to the law of the place where it was entered into unless it appears it was entered into in good faith with reference to the law of some other state." Ohio Cas. Ins. Co. v. Travelers Indem. Ins. Co., 493 S.W.2d 465, 467 (Tenn. 1973) (citations omitted). "Tennessee generally applies the *lex loci contractus*, but sometimes it applies the law of the place of performance." Cooper, 367 F.3d at 499. Here, Tennessee is the location where the agreement was executed, where Sellers performed under the agreement, and where the alleged discrimination occurred.

(Tenn. Ct. App. 1984)) (internal quotation marks omitted).

With regard to procedural unconscionability, the party opposing enforcement of the contract must present evidence on "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, . . . [and] whether the terms were explained to the weaker party." Cooper, 367 F.3d at 504 (quoting Morrison, 317 F.3d at 666). Here, Sellers has not presented evidence to show that the circumstances surrounding her acceptance of Step 4 arbitration was procedurally unconscionable.

With regard to substantive unconscionability, "[a] contract is substantively unconscionable . . . when its terms 'are beyond the reasonable expectations of an ordinary person, or oppressive.'" Cooper, 367 F.3d at 504 (quoting Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996)). Sellers argues that Step 4 arbitration is unconscionable because it would be a hardship for her to pay the $125.00 fee required by the agreement. Both federal and state courts have considered the cost of arbitration in analyzing whether arbitration provisions are unconscionable. "[T]he party seek[ing] to invalidate an arbitration agreement on the ground that arbitration is prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Winn, 2011 WL 294407, at *9 (quoting Pyburn, 63 S.W.3d at 363); see also Webb v.

-22-

<u>First Tenn. Brokerage, Inc.</u>, No. E2012-00934-COA-R3-CV, 2013 WL 3941782, at \*9-10, \*18 (Tenn. Ct. App. June 18, 2013); <u>Flanary v. Carl Gregory Dodge of Johnson City, LLC</u>, No. E2004-00620-COA-R3CV, 2005 WL 1277850, at \*7 (Tenn. Ct. App. May 31, 2005) (citing <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 90 (2000)).

The court finds that Sellers has not met her burden of showing that the potential costs of arbitration are great enough to deter her and similarly situated individuals from seeking to vindicate their rights in the arbitral forum. <u>See</u> <u>Davis v. Morningside of Jackson, L.L.C.</u>, No. 1:05-CV-1284-T-AN, 2006 WL 889325, at \*9 (W.D. Tenn. Mar. 28, 2006); <u>see also</u> <u>Byrd v. SunTrust Bank</u>, No. 2:12-cv-02314-JPM-cgc, 2013 WL 3816714, at \*16-17 (W.D. Tenn. July 22, 2013); <u>Deck v. Miami Jacobs Bus. Coll. Co.</u>, No. 3:12-cv-63, 2013 WL 394875, at \*5-6 (S.D. Ohio Jan. 31, 2013); <u>Smith v. Sterling Jewelers, Inc.</u>, No. 5:12cv2675, 2013 WL 271813, at \*3-4 (N.D. Ohio Jan. 24, 2013). Under Step 4 arbitration, the only cost that the employee is responsible for paying is the filing fee of one day's base pay or $125.00, whichever is less.[12] All other arbitration costs are borne by Macy's. In addition, Macy's must pay the entire filing fee if the employee prevails in arbitration, and Macy's must

_____

[12]Although Sellers has not presented evidence regarding the amount of her daily base pay, in her _in forma pauperis_ application, she states that her monthly gross pay while working at Macy's was $600.00. Based on this monthly amount, it would appear that one day's base pay for Sellers would have been less than $125.00, which would mean that her filing fee likely would be some amount less than $125.00.

reimburse the employee his or her attorney's fees (up to $2,500.00 in a rolling 12-month period) or, where the employee chooses not have an attorney, up to $500.00 for the employee's incidental costs. Based on these facts, Sellers has not satisfied her burden of demonstrating that the filing fee requirement is unconscionable.[13] See Davis, 2006 WL 889325, at *8 ("The question is whether this added cost will be borne by the plaintiff and whether that expense, combined with the other costs associated with arbitrating, are so potentially high that a substantial number of comparable potential litigants will not file at all.").

A final consideration is whether the court should dismiss this action or, instead, stay these proceedings pending arbitration. Several circuit courts, focusing on the language of § 3 of the FAA, have held that it is proper for a court to retain jurisdiction by staying the pending litigation until the arbitration is concluded.

---

[13]Even if the court were to conclude that the filing fee provision is unconscionable, the appropriate remedy would be to enforce the arbitration agreement but sever the filing fee provision, pursuant to the severability clause contained in Article 20 of the Plan Document. See Dortch v. Quality Rest. Concepts, LLC, No. 1:12-CV-198, 2013 WL 1789603, at *8 (E.D. Tenn. April 26, 2013); see also Morrison, 317 F.3d at 677-78 (holding that, with respect to a cost-splitting provision, both Tennessee contract law and federal precedent support severance of the provision from an arbitration agreement where "that provision was not interwoven with the rest of the agreement and may be deleted without affecting the rest of the agreement's provisions regarding arbitration"); Taylor v. Butler, 142 S.W.3d 277, 285 (Tenn. 2004) (stating that "[i]f a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term").

See Lloyd v. HOVENSA, LLC, 369 F.3d 263, 268-71 (3d Cir. 2004); Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955-56 (10th Cir. 1994).  However, other circuit courts, focusing instead on the underlying policies set forth by the Supreme Court and Congress, have held that a court may dismiss the action before it if all the claims in the suit will be referred to arbitration.  See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988).  The Sixth Circuit appears to follow the latter approach.  See Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them.  We have already rejected that argument."); Hensel v. Cargill, Inc., No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed."); see also Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (quoting Alford, 975 F.2d at 1164).  Numerous

district courts in this circuit, relying on <u>Ozormoor</u>, have dismissed actions where all claims are subject to arbitration. <u>See</u> <u>Cox v. Gen. Elec. Co.</u>, No. 1:12-cv-671-HJW, 2013 WL 3811762, at *4 (S.D. Ohio July 22, 2013); <u>Kovac</u>, 930 F. Supp. 2d at 865; <u>Braverman Props., LLC v. Bos. Pizza Rests., LP</u>, No. 1:10-cv-941, 2011 WL 2551189, at *4 (W.D. Mich. June 27, 2011). Here, all claims raised in this litigation are subject to arbitration. In addition, Article 3 of the SIS Program provides that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." Therefore, it is recommended that Sellers' complaint be dismissed without prejudice. <u>Gilchrist v. Inpatient Med. Servs., Inc.</u>, No. 5:09CV2345, 2010 WL 3326742, at *5 n.2 (N.D. Ohio Aug. 23, 2010) (quoting <u>Nestle Waters N. Am., Inc. v. Bollman</u>, No. 1:06-CV-577, 2006 WL 3690804, at *6 (W.D. Mich. Dec. 11, 2006) ("Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice.")).

### III. RECOMMENDATION

For the reasons above, it is recommended that Macy's motion be granted, the parties be compelled to arbitrate this matter, and the case be dismissed without prejudice.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 5, 2014
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**